296 So.2d 885

**Alfred SMITH and Eva Smith**

v.

**CHARLES E. JAY & CO., INC., a corp.**

**SC 533.**

Supreme Court of Alabama.

June 6, 1974.

Turner & Turner, Tuscaloosa, for appellants.

Lloyd, Dining & Boggs, Demopolis, for appellee.

COLEMAN, Justice.

The respondents to a bill in equity for declaratory judgment appeal from decree enjoining respondents from prosecuting against complainant an action at law, filed by respondents as plaintiffs against complainant and another as defendants, until the suit in equity has been tried and completed in the 'equity court. The action at law was filed subsequently to the filing of the bill in equity.

The bill for declaratory judgment in the case at bar was filed in the Circuit Court of Marengo County on June 11, 1973.

Complainant is Charles E. Jay & Co., Inc., a Corporation, formed and operating in Marengo County, and engaged in the real estate and construction business. Complainant will be referred to as Jay.

Respondents are Alfred Smith and his wife, Eva Smith. Complainant avers that respondents "have been permanent residents of Marengo County, Alabama, for many years, but Petitioner is advised that Respondents have recently taken up residence in Hale County, Alabama . . ." Respondents will be jointly referred to as the Smiths.

Jay avers that on February 3, 1973, Jay and the Smiths entered into a written contract for the construction of a house by Jay for the Smiths on a lot of the Smiths in Marengo County. The contract is made Exhibit A to the bill.[1] The bill avers that Jay promised to erect the house for $28,000.00, of which $13,000.00 was to be paid by the Smiths upon delivery of the Kingsberry House Package to the lot; that said package was delivered to said lot and the Smiths paid to Jay $13,000.00; that Jay has erected said house package, although the house has not been "absolutely completed"; that disagreement resulted between Jay and the Smiths as to whether the house has been built "in absolute conformity" with the plans and specifications of the agreement; and that Jay was ordered by the Smiths to cease work on the house and to leave it completely alone.

Jay avers that because Jay has been ordered by respondents to cease work, bad weather has caused the builder's paper on the roof to blow off, the roof is exposed to the weather, the house is depreciating and needs a completed roof before further depreciation occurs, and a justiciable controversy exists.

Jay avers that it has spent $16,565.26 on furnishing the house package and erecting it; that Jay has received only $13,000.00 from the Smiths for this work, and, as stated above, has been ordered to cease and desist from further erection of the house.

Jay prays that on final hearing the court will determine the respective rights of the parties, will establish a lien on the real property "for the $3,565.26 of labor and materials furnished" by Jay, will require the Smiths to permit Jay to finish the house and then to pay to Jay according to the original contract and the value of said labor and materials, or, in the alternative, that the court order the Smiths to pay the amount determined by the court to be due to Jay for said labor and materials furnished to said house so that the Smiths may have some other builder complete the house; and Jay prays for general relief and offers to do equity.

On June 14, 1973, the Smiths filed, in the Circuit Court of Tuscaloosa County, a complaint against Boise Cascade Corporation and Jay as defendants. Complaint contains three counts.

In Count 1, plaintiffs claim of defendants $50,000.00 for that on and prior to February 8, 1973, defendants fraudulently

---

1. In pertinent part, Exhibit A recites:
"KNOWN (sic) ALL MEN BY THESE PRESENTS: That the undersigned Alfred Smith and wife, Eva Smith, as Owner and Charles E. Jay Company, Inc., as Builder, have contracted as follows:
"(1) Contractor will furnish materials and perform the work for the construction of Kingsberry Model Marseilles, M15-4, on owner's lot, exactly according to the attached plans and specifications to meet FHA standards for the consideration of Twenty Eight Thousand and No/100 Dollars ($28,000.00).
"(2) Legal Description of Lot–lot 5, Block D of Marengo Hills S/D as recorded in Probate Office in Marengo County, Alabama.

"(3) Any changes in the attached plans and specifications must be made in writing.
"(4) The owner will pay the above consideration of $28,000.00 as follows:
"(A) $500.00 in Earnest Money to be paid upon signing this contract.
"(B) $12,500.00 upon delivery of Kingsberry house package to owners lot.
"(C) $8,000.00 when house is erected and heating, plumbing and electrical work roughed in.
"(D) $7,000.00 upon receipt of final inspection."

represented unto plaintiffs that defendants would construct a Kingsberry Home designated as a Marseilles M15-4 which was to be prefabricated by Boise Cascade and erected on "the Plaintiffs' lot #5, Block D of Marengo Hills Sub-division on Indian Hills Road in Demopolis, Alabama . . ." by Jay, according to plans and specifications prepared by defendants and furnished to plaintiffs.

Plaintiffs allege that "The said fraudulent representations" were made by defendants to induce plaintiffs to enter into a contract for prefabrication and erection of said house for $28,000.00; that plaintiffs, relying upon said "fraudulent representations" entered into said contract with defendants on February 8, 1973, for construction of said house on said lot for $28,000.00, of which plaintiffs paid to defendants $13,000.00 on February 8, 1973, and balance of $15,000.00 was to be paid on completion of said house according to said plans and specifications.

Plaintiffs allege that defendants have not complied with said plans and specifications in eight described particulars; that said house is so poorly constructed as to be unfit and unsafe to live in; that said house is worthless and makes plaintiffs' lot worthless; that plaintiffs have notified defendants of said defects but defendants have failed and refused to correct the same, and plaintiffs claim "actual, incidental, consequential and punative damages."

Count 2 claims damages for breach of warranty, and Count 3 claims for breach of said agreement; both counts enumerating the same defects in construction which are enumerated in Count 1.

On July 6, 1973, the Smiths filed a motion to dismiss the instant suit brought by Jay in Marengo County. The motion sets out five grounds. Ground 1 is that the complaint fails to state a claim on which relief can be granted.

Grounds 2 and 4 are that the action is brought in the wrong county because the Smiths are residents of Hale County.

Ground 3 is that the action "is brought in the wrong county" because an action is pending in Tuscaloosa County, wherein the Smiths are plaintiffs, against Boise Cascade and Jay, *"being case number 5133 which arises out of the same transaction or occurrence that is the subject matter of . . ."* the Marengo County case, and in which Jay may obtain the same relief by counterclaim as Jay seeks in the Marengo County suit.

Ground 5 is that the court "lacks jurisdiction" because the Tuscaloosa County action is pending in which Jay may obtain relief by counterclaim.

On July 10, 1973, Jay filed in Marengo County, in the instant case, a motion praying that the court issue a temporary injunction enjoining the Smiths from further prosecution of the Tuscaloosa County action against Jay, pending the trial and disposition of the instant case in Marengo County.

The Marengo County court set the motion for hearing and directed that the Smiths be given notice thereof.

The Smiths filed a motion to dismiss the motion for temporary injunction.

On September 11, 1973, the Circuit Court of Marengo County rendered the decree appealed from which recites in pertinent part as follows:

"The Court hereby finds that the instant case was filed in this Court on June 11, 1973 and that the real property forming the subject matter of the suit lies in Marengo County; that the action filed in the Tuscaloosa County Circuit Court was not filed until 3 days later, on June 14, 1973; that this Court has Jurisdiction of the case so far as it involves the rights of the parties to this suit. Upon filing of Bond for $1,000.00, the Court does therefore, enjoin the respondents, Alfred Smith and Eva Smith, from prosecuting the action filed in the Tuscaloosa County Circuit Court, being Cause

No. 5133, against the Complainant herein, Charles E. Jay & Company, Inc., until the instant case has been tried and completed in this Court."

Respondents appeal and assign as error rendition of the decree of September 11, 1973.

Respondents contend that the court erred in granting the injunction because the parties and issues in the case sought to be enjoined (Tuscaloosa County case) are not the same as the parties and issues in the prior pending case (Marengo County case).

The Alabama Rules of Civil Procedure were adopted by the Supreme Court of Alabama January 3, 1973. The instant case commenced when the bill of complaint was filed June 11, 1973, prior to the effective date of the new rules and was pending when the new rules became effective July 3, 1973. The case in Tuscaloosa County was filed June 14, 1973, and also was pending July 3, 1973. New Rule 86 recites:

"Rule 86

"Effective Date

"These rules shall take effect six months from the date of their adoption by the Supreme Court of Alabama. They govern all proceedings in actions brought after they take effect and also all further proceedings in actions then pending, except to the extent that in the opinion of the court their application in a particular action pending when the rules take effect would not be feasible or would work injustice, in which event the former procedure applies." (290 Ala. 597)

The Marengo County action and the Tuscaloosa County action were pending when the rules took effect. By the terms of Rule 86, the new rules govern all further proceedings in both cases after July 3, 1973, unless the application of the new rules in those actions would not be feasible or would work injustice.

The record indicates that the court and the parties undertook to apply the new rules in proceedings after July 3, 1973.

The motion for temporary injunction was filed July 10, 1973, and was granted by order filed September 12, 1973.

Rule 13(a) commences as follows, to wit: '

"(a) Compulsory Counterclaims. A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction. . . ." (290 Ala. 424)

Paragraph (a) then states exceptions as to circumstances in which the pleader need not state his claim as a counterclaim. The record does not disclose any circumstances which show that the claim stated by the Smiths in the Tuscaloosa County action comes within any exception so that the Smiths are not required to state such claim as a counterclaim in the Marengo County action.

As noted above, the Smiths, on July 6, 1973, filed a motion to dismiss the instant action. In grounds 3 and 5 of the motion, the Smiths allege that there is an action pending in Tuscaloosa County by the Smiths against Boise Cascade and Jay, ". . . being case number 5133 which arises out of the same transaction or occurrence that is the subject matter of the . . ." instant case. According to the terms of Rule 13(a), supra, the claim of the Smiths against Jay is a counterclaim which the Smiths are required to state in the instant case in Marengo County, or the Smiths will take the risk that their claim will be subject to the bar set out in the last sentence of Rule 13(a) as follows:

". . . In the event an otherwise compulsory counterclaim is not asserted

in reliance upon any exception stated in paragraph (a), relitigation of the claim may be barred by the doctrines of res judicata or collateral estoppel by judgment in the event certain issues are determined adversely to the party electing not to assert the claim." (290 Ala. 424)

The argument of appellants, the Smiths, is to effect that the action of the court in granting the temporary injunction is equivalent to sustaining a plea in abatement to the Tuscaloosa County action, that the prior pendency of the Marengo County action is not a good ground for abating the Tuscaloosa County action because the issues in the two cases are not the same and the parties are not the same. First, we consider whether the issues are the same in the two actions.

With respect to a plea in abatement, this court has said:

"...  A definite rule has been established by this court by which a plea of this nature may be measured. In the case of Kaplan v. Coleman, 180 Ala. 267, 60 So. 885, 886, Mr. Justice Somerville, speaking for this court, says: 'A plea in abatement because of another suit pending bears a strong analogy to a plea of res judicata, and a fair test of its sufficiency is whether a final judgment or decree in the prior suit would be conclusive between the parties and operate as a bar to the second.'" Bell v. Jones, 223 Ala. 497, 498, 136 So. 826, 827.

On the record before us, in the light of what has been written above, the issues to be litigated in the Marengo County action are whether Jay has breached the contract and whether the Smiths have breached the contract. These same issues would be the issues presented in the Tuscaloosa County action. Between the Smiths and Jay, judgment in one action would bar the other action.

Appellants' second contention is that the prior pendency of the Marengo County action is not ground for abatement of the Tuscaloosa County action because there is a party, Boise Cascade, in the Tuscaloosa County action which is not a party to the Marengo County action.

The decree appealed from does not bar or stay the prosecution of the Tuscaloosa County action against Boise Cascade. In fact, the decree does not permanently bar prosecution of the Tuscaloosa County action against Jay. The Smiths are merely enjoined from prosecuting the Tuscaloosa County action against Jay until ". . . the instant case has been tried and completed in this (Marengo County) court."

In the motion to dismiss the instant case, filed July 6, 1973, the movants, the Smiths, say, in grounds 3 and 5, that there is an action pending in Tuscaloosa County by the Smiths against Boise and Jay, ". . . being case number 5133 which arises out of the same transaction or occurrence that is the subject matter of the above styled cause (Marengo County action) and in which the Complainant in the above styled cause may obtain the same relief, by way of a counter claim, as it is seeking in the above styled cause." (Par. supplied) It is equally true that the Smiths may obtain relief in the Marengo County case by filing a counterclaim and making Boise Cascade a party defendant to the counterclaim if they elect to file it in the instant case. New Rule 13(h) provides:

"(h) Joinder of Additional Parties. Persons other than those made parties to the original action may be made parties to a counterclaim or cross-claim in accordance with the provisions of Rules 19 and 20." (290 Ala. 425)

In Federal Practice and Procedure, Wright and Miller, Vol. 6, § 1435, page 189, the following appears:

"Since Rule 13(h) may be employed to join parties in a wide range of different factual and legal situations, a few of the more common examples of its use may serve to illustrate its application. The

listing that follows is not exhaustive; indeed, it should be remembered that the rule refers broadly to the addition of parties to 'a counterclaim and cross-claim' and does not limit its availability to any particular type of action. Rule 13(h) has been invoked successfully to add joint tortfeasors or persons who were jointly and severally liable . . ."

The case next discussed is pertinent to the effect of adding an additional party in the Tuscaloosa County action.

In Ex parte Adams, 216 Ala. 241, 113 So. 235, plaintiff filed suit against Louis Pizitz Dry Goods Company, a corporation, claiming damages for unlawful arrest and imprisonment. Subsequently, plaintiff died. E. Y. Adams, as administrator of plaintiff's estate, filed suit against the same corporation and Isadore Pizitz as defendants. The complaint alleged wrongful imprisonment of plaintiff's intestate, etc., as a proximate consequence of which plaintiff's intestate was made sick, which sickness continued to grow worse until she died.

The corporation filed plea in abatement of the suit by the administrator alleging pendency of the prior suit. Subsequently the corporate defendant filed motion to dismiss and abate the suit by administrator because of the pendency of the prior suit, and the trial court granted the motion to dismiss.

The administrator filed original petition in this court praying for mandamus to require the trial court to vacate the order granting the motion to dismiss. This court denied mandamus and, among other things, said:

"It is contended in brief of counsel that the statute is not available because the defendants are not identical in the two suits; that the first suit was against the Pizitz corporation alone, while the second suit is against the corporation and Isadore Pizitz also. 'The effect of the pendency of the former suit as a matter of abatement was not avoided by raising new questions as to new parties in the second suit along with the old question between the parties to both suits.' Ex parte Dunlap, 209 Ala. [453] 456, 96 So. [441] 443. The plea in abatement and motion to dismiss was by the corporation alone and not Isadore Pizitz, and the cause was therefore necessarily abated or dismissed as to the corporation alone, and as to this the trial court did not err, and the petition for mandamus is denied." (216 Ala. at 243, 113 So. at 236)

As between the Smiths and Jay, the issues are the same. The Smiths and Jay are parties to both actions. The effect of the prior Marengo County action, as matter in abatement of the subsequent Tuscaloosa County action, was not avoided as to Jay by joining Boise Cascade as a defendant in the Tuscaloosa County action.

Commentators on the federal rules of civil procedure make the following statement:

"Ideally, once a court becomes aware that an action on its docket involves a claim that should be a compulsory counterclaim in another pending federal suit, it will stay its own proceedings or will dismiss the claim with leave to plead it in the prior action. However, if the second court takes no action or is unaware of the prior pending claim, then it is within the judicial discretion of the federal court in which the first action is pending to enjoin the parties from proceeding with the second suit. Indeed, by granting an injunction in this context, the court furthers the general federal policy against multiplicity of litigation embodied in Rule 13(a) itself." Federal Practice and Procedure, Wright and Miller, Vol. 6, § 1418, pages 103, 104.

Accordingly, we are of opinion that the decree granting the temporary injunction is due to be affirmed.

Affirmed.

HARWOOD, BLOODWORTH, MADDOX, McCALL, FAULKNER and JONES, JJ., concur.

HEFLIN, C. J., and MERRILL, J., concur in result.

HEFLIN, Chief Justice (concurring specially):

I concur in the result expressed by the majority opinion in this case, but I do not feel that an extended discussion of prior practice is necessary in order to reach this result. There is inherent danger that ills of prior practice can creep into the Alabama Rules of Civil Procedure if prior practice decisions are used to interpret language in the new civil trial rules. If judicial interpretation of a rule is necessary then resort to decisions of the federal courts or courts of other states on identical or similarly worded rules would be more appropriate. It appears to me that the case under review presents the very situation that Rule 13 of the Alabama Rules of Civil Procedure was designed to cover.

As the majority opinion points out in its quote from the Wright and Miller work on the federal rules of procedure, "by granting an injunction in this context, the court furthers the general federal policy against multiplicity of litigation embodied in Rule 13(a) itself."

This same general policy against multiplicity of litigation underpins Rule 13(a) of the Alabama Rules and under the circumstances presented by this case, the trial court did not abuse its discretion in issuing the order appealed.

The commentary to Rule 13 clearly demonstrates the soundness of this position:

"In general, the scheme of the rule is that any claim whatever which any party has against any opposing party may be asserted as a counterclaim. It is immaterial whether the counterclaim is legal or equitable or in contract or in tort, or even whether it has any connection whatever with the plaintiff's claim. The counterclaim may ask for more or different relief than that sought by the opposing party, it need not run for all the parties on one side and against all the parties on the other, and it need not tend to diminish or defeat the recovery sought by the opposing party. Additional parties may be brought in to defend against the counterclaim where their presence is necessary for the granting of complete relief.

"Though any claim against an opposing party may be presented as a counterclaim, the rule also provides that such a claim must be pleaded as a counterclaim if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim. The purpose of this provision is to avoid circuity of actions, and to require assertion as counterclaims of those claims which are likely to turn on the same facts as the original claim. A counterclaim is compulsory if there is any logical relation of any sort between the original claim and the counterclaim . . . .

"If the pleader neglects to assert a compulsory counterclaim the court can grant leave to amend the pleadings to raise it. But if it is not asserted, it cannot thereafter be sued on in another action." (Citation omitted)

In short, I would hold that the case now before the court proceeded under the new rules and that the new rules provide a satisfactory basis for deciding the procedural issues presented.