Aura Mae Grimes appeals from an order of the Circuit Court of Barbour County in which it exercised jurisdiction over matters raised in an action that she has pending in the Circuit Court of Jefferson County. We affirm.[1]
Ms. Grimes is a member of the non-opt-out plaintiff class of policyholders in Robertson v. Liberty National Life Ins. Co., No. CV-92-021, in which, in 1994, the Circuit Court of Barbour County entered a final judgment pursuant to a settlement agreement between the class members and the defendant Liberty National Life Insurance Company ("Liberty National"). The judgment provided in part:
 "6. Consistent with the Findings of Fact and Conclusions of Law entered contemporaneously herewith, and subject to this Court's retention of jurisdiction to enforce *Page 616 
this Order and the Stipulation of Settlement, as amended and modified, all claims asserted in this action, including those claims asserted in Named Plaintiff's Amended Complaint, and all claims which have been or could be asserted (by intervention or otherwise) by or on behalf of any Class Member relating to the `alleged cancer exchange programs' or the `Released Claims' (as those terms are defined in the Stipulation), are DISMISSED in their entirety on the merits, with prejudice, and defendant Liberty National (and the related beneficiaries of the Release set forth in Section III of the Stipulation of Settlement) are hereby RELEASED from all claims, actions, causes of action and liabilities which were or could be asserted by or on behalf of any Class Members, which relate to the alleged cancer exchange programs or the Released Claims as defined in the Stipulation of Settlement. The Release provided in Section III of the Stipulation is hereby approved and made effective and incorporated herein by reference.
 "7. Named Plaintiff and each and all Class Members are hereby permanently ENJOINED, precluded and barred from filing, initiating, asserting, maintaining, pursuing, or continuing or participating as a litigant (by intervention or otherwise) in any action, whether an individual lawsuit or class action, in any court, asserting any of the claims dismissed herein or any of the Released Claims as defined in the Stipulation of Settlement: provided, however, that neither this injunction, nor the settlement benefits provided by the Stipulation of Settlement described in this Order, shall apply to any individual who was a named plaintiff in any separate action filed on or before March 10, 1993, which alleges fraud, concealment, failure to disclose or misrepresentation in connection with the purchase, sale, issuance, exchange or replacement of any one or more Liberty National cancer policies, unless said action has been voluntarily dismissed without prejudice prior to the date of this Order and Final Judgment.
". . . .
 "12. This Court reserves and maintains continuing jurisdiction over all matters relating to the Settlement or the consummation of the Settlement; the validity of the Settlement; the construction and enforcement of the Settlement and any orders entered pursuant thereto; any disputes which may arise between Class Members with respect to the persons entitled to receive the proceeds of any amounts payable to Class Members under the Stipulation; and the entry and enforcement of this FINAL JUDGMENT, including, in the event of reversal, vacation or modification of this final judgment, jurisdiction to revoke this Order and Final Judgment in its entirety and to reinstate all claims dismissed or claims, actions, causes of action and liabilities released pursuant to paragraph 5 hereof; to tax court costs (subject to the terms and conditions of the Stipulation) which shall consist of all expenses for the Class notice, fees and expenses of actuarial or other experts or consultants, fees and expenses of the Special Master, and all other matters pertaining to the Settlement or its implementation and enforcement."
(Emphasis original.)
Section III of the settlement agreement, which was incorporated into the judgment, contained the following release:
 "Effective upon . . . the final approval of all aspects of this Settlement by the Circuit Court of Barbour County, Alabama, and the final, binding affirmance of said approval in the event of any appeal, Named Plaintiff, individually and on behalf of the Class, and each Class Member, separately and severally, do hereby fully, finally, and forever release Liberty National and each of its past, present, and/or future: parents, subsidiaries, affiliated and related entities and persons, officers, employees, directors, shareholders, agents, successors, and assigns, separately and severally, of and from all claims, causes of action and liabilities (known or unknown) which have been or could be asserted by any Class Member, whether arising under state or federal statutory or common law, to the extent such claims, causes of action or liabilities arise from, are connected with, *Page 617 
or are in any way based upon or related to any allegation of fraud, misrepresentation, concealment, failure to disclose, or other tortious conduct or breach of duty which occurred in whole or in part on or before the date of this Settlement Agreement, regarding (1) the alleged cancer policy exchange programs, (2) any other transaction resulting in the issuance of a new policy providing cancer coverage for a Class Member previously insured under an old policy, or (3) the failure to offer or issue any Class Member a new policy (the `Released Claims')."
The final judgment entered in Robertson was affirmed by this Court. See Adams v. Robertson, 676 So.2d 1265 (Ala. 1995).
In 1997, Ms. Grimes filed an action, which is pending in the Circuit Court of Jefferson County (CV-97-70), in which she seeks compensatory and punitive damages based on allegations of the tort of outrage, fraud, breach of contract, and bad-faith refusal to pay an insurance claim. She filed this present appeal after the Circuit Court of Barbour County, at Liberty National's request, issued an order enforcing the injunction that it had issued in Robertson. Liberty National sought the order out of concern that Ms. Grimes was basing at least some of her claims on statements or representations alleged to have been made by Liberty National at the time it sold Ms. Grimes her cancer policy. Specifically, the Circuit Court of Barbour County noted in its order that the release that had been incorporated into theRobertson judgment covered "any frauds or other claims, including breach of contract, which arose out of transactions involving the cancer exchange program or statements or representations made by Liberty National or its agents pursuant to such a transaction." The court went on to state:
 "Accordingly, under the existing injunction in this case [Robertson], the plaintiff in the underlying action [Ms. Grimes] remains permanently enjoined from asserting in a separate action any claims based upon representations or statements allegedly made to the plaintiff in connection with her decision to purchase her 1986 policy.
 "As to claims of fraud based upon alleged representations made after the entry of the Final Judgment [in Robertson], which the plaintiff in the underlying action contends were made in 1995 and 1996, such claims are not barred by the existing injunction. Likewise, claims for breach of contract based upon the written policy and claims for bad faith failure to pay claims under the policy as written are not barred by the existing injunction. As noted above, however, any claim for breach of contract or bad faith based upon an alleged oral contract or representation arising prior to the entry of the Final Judgment is barred by the existing injunction."
After carefully examining the record and the accompanying briefs, we conclude that the Circuit Court of Barbour County, pursuant to its continuing jurisdiction to oversee and administer the Robertson class action, had the authority to issue its order enforcing the 1994 injunction. In Ex parte Burch, 236 Ala. 662,665-66, 184 So. 694, 697 (1938), this Court wrote:
 "It is uniformly held that where two or more courts have concurrent jurisdiction, the one which first takes cognizance of a cause has the exclusive right to entertain and exercise such jurisdiction, to the final determination of the action and the enforcement of its judgments or decrees.
 "Mr. Chief Justice Cooley, in speaking for the Supreme Court of Michigan, in the case of Maclean v. Wayne Circuit Judge, 52 Mich. 257, 258, 18 N.W. 396, 397
[(1884)], which involved the issuance of a writ of prohibition, said: `It is a familiar principle that when a court of competent jurisdiction has become possessed of a case its authority continues, subject only to the appellate authority, until the matter is finally and completely disposed of, and no court of co-ordinate authority is at liberty to interfere with its action. The principle is essential to the proper and orderly administration of the laws; and, while its observance might be required on the grounds of judicial comity and courtesy, it does not rest upon such consideration exclusively, but is enforced to prevent unseemly, expensive, and dangerous conflicts *Page 618 
of jurisdiction and of process. If interference may come from one side, it may from the other also, and what is begun may be reciprocated indefinitely. The country has witnessed some such conflicts in which federal and state courts of co-ordinate powers have unguardedly or unadvisedly undertaken to hamper or restrain each other's actions, and the mischiefs of which such cases are suggestive are quite as likely to arise when courts existing as part of the same system intrude with their process upon each other's authority. The writs prayed for should issue.'
 "And this court in the case of Gay, Hardie Co. v. Brierfield Coal Iron, Co., 94 Ala. 303, 11 So. 353, 16 L.R.A. 564, 33 Am.St.Rep. 122 [(1891)], in an opinion by Coleman J., said [94 Ala. at 318, 11 So. at 359]: `All the authorities recognize the importance of carefully preserving the boundary line between courts of concurrent jurisdiction, in order to prevent conflicts, and to preserve in harmony their relations to each other. . . . To prevent abuse of the principle, and the successful perpetration of injustice or fraud, through forms of law, courts accord to suitors and litigants all necessary latitude, and they are not restricted to any one forum for the adjudication of any question or right, provided only that such adjudications are not upon questions pending in another concurrent court which had prior jurisdiction, and provided that its writs or process shall not hinder the performance of any lawful mandate of such concurrent court, or interfere with the possession of any subject-matter then in gremio legis.' Many authorities could be cited in support of this proposition, but we deem it unnecessary, in view of the universality of the rule, to further cite authorities. But see 15 C.J. § 583, pp. 1134 and 1135, and authorities cited in notes thereunder.
 "In Vol. 50, § 22, p. 667, Corpus Juris, the author states the rule with reference to issuance of writs of prohibition, to preserve the jurisdiction of the court which first takes cognizance of a cause, as follows: `Prohibition will lie to restrain one court from assuming jurisdiction of a matter over which another, having concurrent jurisdiction, has assumed and is exercising jurisdiction.' This statement of the author of the text seems to be abundantly supported by the authorities. [Citations omitted.]"
See, also, Ex parte Liberty National Life Ins. Co., 631 So.2d 865
(Ala. 1993); Ex parte Moore, 382 So.2d 548 (Ala. 1980); Orton v.Cheatham, 293 Ala. 639, 309 So.2d 94 (1975); Smith v. Charles E.Jay Co., 292 Ala. 513, 296 So.2d 885 (1974); Ex parte State exrel. Ussery, 285 Ala. 279, 231 So.2d 314 (1970); Rush v. Simpson,373 So.2d 1105 (Ala.Civ.App. 1979), and the cases cited therein; Clements v. Barber, 49 Ala. App. 266, 270 So.2d 815
(Ala.Civ.App. 1972); Ex parte State Mutual Ins. Co.,715 So.2d 207 (Ala. 1997) (plurality decision recognizing, among other things, the power of a court entertaining a class action to enjoin a competing action filed after the class action); Amend. 328, § 6.04 (b), Ala. Const. 1901 ("[the circuit court] shall have authority to issue such writs as may be necessary or appropriate to effectuate its powers").
All of these decisions demonstrate the well-settled rule that where two courts have equal and concurrent jurisdiction, the court that first exercises jurisdiction in a matter has preference and is not to be obstructed in the legitimate exercise of its powers by a court of coordinate jurisdiction. The Circuit Court of Barbour County was acting well within its power in enforcing its permanent injunction so as to prevent Ms. Grimes from relitigating in another forum any claims against Liberty National that she, as a member of the Robertson class, had released in 1994.
AFFIRMED.
HOOPER, C.J., and MADDOX, ALMON, COOK, and SEE, JJ., concur.
KENNEDY, J., dissents.
SHORES and LYONS, JJ., recuse themselves.
[1] Ms. Grimes also filed in this Court a "Petition for Emergency Supervisory Injunction, for Writ of Prohibition, or for Writ of Mandamus," raising the same issues that she raises on this appeal. That petition, docketed as case No. 1971597, will be dismissed. *Page 619