WOODALL, Justice.
This is an appeal from a judgment entered on a jury verdict for Lula Calhoun, based on her claim alleging the tort of outrage against Attenta, Inc. (“Attenta”), the third-party administrator of the workers’ compensation program for Linden Lumber Company, Inc. (“Linden”). We vacate the judgment and dismiss the case and the appeal.

I. Factual and Procedural History

This case ultimately arose out of a workplace accident in which Robert Lee Calhoun, Jr., the husband of Lula Calhoun, was fatally injured while employed by Linden. On March 14, 2003, following his death, Calhoun filed a complaint against Linden in the Marengo Circuit Court (hereinafter sometimes referred to as the “Marengo County action”), seeking worker’s compensation death benefits, pursuant to Ala.Code 1975, § 25-5-60 et seq.
On or about July 14, 2003, Calhoun amended her complaint to add as a defendant G.A. West & Company, Inc. (“West”). She amended her complaint a second time on May 14, 2004, to add as defendants Forest Products Engineering, Inc. (“Forest Products”), and various of her deceased husband’s co-employees. Her amended complaints alleged that West and Forest Products were “in charge of the work area and/or the premises” where the accident that injured Mr. Calhoun occurred. They further alleged that West and Forest Products negligently or wantonly failed to provide Mr. Calhoun a safe *142 place to work, resulting in his wrongful death. Finally, they alleged willful misconduct on the part of the co-employees. On June 1, 2005, the Marengo Circuit Court issued “findings of fact, conclusions of law, and order” as to Calhoun’s worker’s compensation claim against Linden, awarding Calhoun future weekly death benefits for 375 weeks. The order also stated, in pertinent part:
“It is further ORDERED, ADJUDGED AND DECREED that [Linden] shall be released and forever discharged from all claims arising out of the deceased’s employment with [it] and that [Linden] is subrogated, as provided under Ala.Code § 25-5-11 (1975) as amended, to any recovery through settlement, judgment or otherwise that [Calhoun] may receive or recover from or on behalf of any third party for the injuries received by the deceased and/or [Calhoun] and made the subject of this action.”
(Emphasis added.) The court did not certify the order as a final judgment pursuant to Rule 54(b), Ala. R. Civ. P.
In the meantime, litigation involving the other parties and claims proceeded apace. For example, on January 20, 2007, West moved for a summary judgment. Calhoun moved for a summary judgment on April 4, 2007, and Forest Products moved for a summary judgment on August 3, 2007. West’s motion was denied on May 3, 2007.
In early September 2007, a flurry of settlement negotiations occurred among counsel for (1) Calhoun, (2) Linden, (3) West, and (4) Forest Products. On September 5, 2007, Linden’s counsel sent a letter to Calhoun’s counsel; that letter stated, in pertinent part:
“This letter confirms that [Linden] has offered to release its credit and sub-rogation lien, in part, against the worker’s compensation and medical benefits paid to [Calhoun] in the above referenced action[ ], so long as [Calhoun] acknowledges and agrees to waive her right to seek and [Linden] to recover the next $75,000.00 in future death benefits allegedly due to her. In exchange for this offer by my client, [Calhoun] must release [Linden and Mr. Calhoun’s co-employees] from any and all claims for which [Calhoun has] asserted and/or could have asserted against these defendants and any other [Linden] employee.
“Per our conversation this afternoon, I understand that [Calhoun] will accept this offer. I am glad that the parties were able to come to a resolution of these matters.”
(Second emphasis added.)
The next day — September 6, 2007— West’s counsel sent Calhoun’s counsel a letter, stating, in pertinent part:
“[Y]ou just confirmed by telephone that [Calhoun has] compromised [her] claims against [West] in exchange for ... payment in the amount of [$175,-000]. A more formal release and indemnity agreement will follow. Of course, the settlement requires [Calhoun] to be responsible for — and protect [West] from — the worker’s compensation subro-gation lien.
“Please reply with the manner in which you would like the checks written along with your tax identification numbers.”
That same day, Calhoun’s counsel responded to West’s counsel, stating, in pertinent part: “This will acknowledge receipt of your letter of September 6, 2007. You should make a check in the amount of $175,000.00 ... to Lula Calhoun and her attorney.... I will have someone from my office call your secretary with our tax ID number....”
*143 Another letter was sent that same day, September 6, 2007, to Calhoun’s counsel from counsel for Forest Products. That letter stated, in pertinent part:
“This will confirm that we have agreed to resolve and settle all claims brought in the Calhoun ... case[ ] against [Forest Products] for a payment of [$17,500] in return for a pro tanto full and final release of all claims and a pro tanto joint stipulation of dismissal with prejudice of [Forest Products].
“I will have a check in that amount made payable to [Calhoun’s counsel] and deliver it to you upon receipt of the executed Release and filed Joint Stipulation.
“Thank you for your professionalism in handling this case with me, and good luck in your claims against [West].”
(Emphasis in original.)
Correspondence beginning on September 11, 2007, however, reveals that elements of uncertainty remained as to the terms of the proposed settlements. On that day, Linden’s counsel wrote Calhoun’s counsel, stating, in pertinent part:
“My letter of September 5, 2007, accurately states our agreement. Your letter which followed the next day does not dispute it. It was not until you called me yesterday that you attempted to change or otherwise alter our agreement.
‘Tour attempt to re-characterize the settlement as ‘off the back-end of future death benefits’ makes no sense. Generally, the purpose of Alabama’s Worker’s Compensation Act is to prevent the double recovery of benefits.... Your new assertion would have the effect of doing just that — providing Lula Calhoun with double benefits. That was not part of our agreement. The story that you are now advancing ... never occurred. ■
“As you know, my client, [Linden], needs immediate relief from its obligation to continue paying Lula Calhoun death benefits. It is the only reason that we agreed to negotiate with [her] in the first place.
“I have notified [West’s] counsel, by copy of this letter, that [Linden] continues to assert its full credit and subrogation interests in this case and any payment of settlement proceeds by them would be at its peril.”
(Emphasis added.)
On September 27, 2007, West’s counsel wrote Calhoun’s counsel, stating, in pertinent part:
“I have received settlement checks. We are ready, willing and able to pay ... $175,000.00 to Lula Calhoun.... As you know, however, we have some concern about [Linden’s counsel’s] September 11, 2007, letter articulating some kind of dispute between [Calhoun] and [Linden ], and notifying us that [Linden] ‘continues to assert its full credit and subrogation interests in this case and any payment of settlement proceeds by [West] would be at its peril.’
“[West’s] settlement was with [Calhoun], not with [Linden]. [Calhoun is] responsible to satisfy [Linden’s] workers’ compensation liens.
“... [Y]ou asked that I hold on to these checks for the time being. I understand that you ... are working to resolve the present dispute with [Linden]. I look forward to hearing from you next week regarding the matter.”
(Emphasis added.)
On September 21, 2007 — on the theory that settlements had been reached extinguishing Linden’s liability to Calhoun for further worker’s compensation death benefits — Attenta discontinued the monthly payments to Calhoun. Nevertheless, the *144 litigation continued. On October 25, 2007, West, in a “second amended answer to plaintiffs second amended complaint,” filed a counterclaim against Calhoun and a cross-claim against Linden for “interpleader.” On November 8, 2007, Linden filed an answer to the cross-claim and an “answer of counterclaim.”
On November 12, 2007, Calhoun commenced this action by filing a three-count complaint in the Wilcox Circuit Court against Linden and Attenta (hereinafter sometimes referred to as “the Wilcox County action”), alleging (1) the tort of outrage, (2) fraud, and (3) conspiracy. The complaint alleged, in pertinent part:
“8. On or about September 5, 2007, Lula Calhoun was negotiating settlement of a lawsuit against [West] resulting from the death of Robert Lee Calhoun, Jr. The parties were attempting to work out a settlement contingent on the waiver of all right of credit/subrogation to all medical benefits and workers’ compensation death benefits previously paid by [Linden].
“9. A dispute arose over the terms of the waiver by [Linden], [Linden] contends no agreement was reached over the terms of the waiver.
“10. [Linden] notified [West] that defendant, [Linden], continues to assert its full credit and subrogation interest in plaintiff, Lula Calhoun’s case and [that] any payment of settlement benefits by [West] would be at its peril.
“11. [Linden and] Attenta then stopped payment on all workers’ compensation death benefit payments to [Calhoun].
[[Image here]]
“13. Defendants have committed the tort of outrage by engaging in an unlawful mental and financial assault on [Calhoun] with the intent to cause [her] . severe emotional distress and financial extortion in order to force a settlement of [Calhoun’s] third party action against [West] that would be advantageous to [Linden], Defendants’ actions are in direct violation of the June 1, 2005, Order of the Circuit Court of Marengo County, Alabama, filed herewith as Exhibit 1. Defendants’ conduct is so outrageous in character and so extreme in degree so as to be regarded as atrocious and utterly intolerable in a civilized society.
“14. As a proximate consequence of defendants’ outrageous conduct, plaintiff has been caused to suffer severe emotional stress and physical suffering and financial loss.
[[Image here]]
“16. Pursuant to an Order entered by the Court in the case styled, Lula Calhoun, et al. vs. Linden Lumber Company, Inc., and bearing Civil action No. CV-03-50 in the Circuit Court of Marengo County, Alabama, defendant, [Linden] was ordered to pay to plaintiff as follows:
“ ‘The Plaintiff Lula Calhoun shall receive gross workers’ compensation benefits of $379,33 for the next 66 weeks, said amount representing 2/3 of the workers’ compensation benefits payable during said period. Thereafter, the Plaintiff Lula Calhoun shall receive gross workers’ compensation benefits of $437.50 for the next 309 weeks thereafter, said amount representing the full workers’ compensation death benefit of 50% of the average weekly wage of the deceased worker with one dependent. Said gross benefits awarded are subject to an attorney’s fee as set forth later in this order.’
“See Second Addendum to Findings of Fact, Conclusions of Law, and Order, signed by Hon. Eddie Hardaway, Jr., *145 dated June 1, 2005 and attached hereto as Exhibit 1.
“17. [Linden and Attenta] represented to the Court and to [Calhoun ] that workers’ compensation death benefit payments would be made pursuant to this Order, and [Linden and Attenta] did in fact begin making payments pursuant to the Order.
“18. [Calhoun] relied upon [Linden and Attenta’s] representation that said payments would be made.
“19. Said representations were false and [Linden and Attenta] made them willfully to induce [Calhoun] to act, or were fraudulently or recklessly represented as true and intended to deceive [Calhoun].
“20. [Calhoun] believed said representations and relied upon them and acted upon them to her detriment.
“21. As a proximate result of said fraud and deceit, [Calhoun] was caused to suffer damages.”
(Emphasis added.)
In the Marengo County action, meanwhile, the court continued to entertain motions filed by various parties. On November 13, 2007, for example, the insurer for Forest Products filed a “motion to enforce settlement agreement,” contending (1) that it had successfully negotiated a settlement with Calhoun, (2) that it had mailed a check and an agreement/release to Calhoun’s counsel, but (3) that the agreement/release had not been executed, despite the passage of more than a month.
In Wilcox County, both Linden and At-tenta unsuccessfully moved to dismiss the Wilcox County action, contending, among other things, that the Wilcox Circuit Court lacked subject-matter jurisdiction over the dispute, because, they argued, its resolution turned on the construction and effect of the order issued by the Marengo Circuit Court in the Marengo County action on Calhoun’s worker’s compensation claim against Linden. Linden was eventually released from the Wilcox County action after settling with Calhoun. The case was tried to a jury solely on the tort-of-outrage claim against Attenta. The jury awarded Calhoun $3,695,298.19 ($1,695,298.19 in compensatory damages and $2,000,000 in punitive damages), and the trial court entered a judgment on that verdict. Attenta appealed.

II. Discussion

On appeal, Attenta renews its argument that the Wilcox Circuit Court lacked subject-matter jurisdiction over this action, because, it contends, the controlling issue in the Wilcox County action is at the center of the dispute in the Marengo County action. Therefore, says Attenta, jurisdiction over the dispute lay exclusively in the Marengo Circuit Court. We agree.
At the outset, we note that the Marengo County action was still pending when the Wilcox County action was commenced.[1] This was so, because the action in Marengo County involved multiple claims against multiple defendants, and the order disposing of the worker’s compensation claim against Linden was not certified as a final judgment. The absence of a Rule 54(b) certification in such a ease renders the order on the worker’s compensation claim interlocutory and subject to modification at any time before the entry of a final judgment. ArvinMeritor, Inc. v. Handley, 12 So.3d 669, 676 (Ala.Civ.App.2007).
*146 It is well settled that if the trial court lacks subject-matter jurisdiction over an action, then all orders and judgments in that action — except an order dismissing the case — are void ab initio. City of Huntsville v. COLSA Corp., 71 So.3d 637, 642 (Ala.2011); Bernals, Inc. v. Kessler-Greystone, LLC, 70 So.3d 315, 319 (Ala.2011). It is equally well settled that “ ‘where two or more courts have concurrent jurisdiction, the one which first takes cognizance of a cause has the exclusive right to entertain and exercise such jurisdiction, to the final determination of the action and the enforcement of its judgments or decrees.’ ” Grimes v. Liberty Nat’l Life Ins. Co., 726 So.2d 615, 617 (Ala.1998) (quoting Ex parte Burch, 236 Ala. 662, 665,184 So. 694, 697 (1938)). See also Ex parte Moore, 382 So.2d 548, 550 (Ala.1980) (the Jefferson Circuit Court could not exercise jurisdiction over an action to declare the validity of mechanic’s liens where there was already pending in the Shelby Circuit Court an action to enforce the liens; the issue raised in the Jefferson County action could be litigated in the Shelby County action); Orton v. Cheatham, 293 Ala. 639, 643, 309 So.2d 94, 96 (1975) (“[T]he court first assuming jurisdiction of a cause ... must be allowed to pursue and exercise its jurisdiction to the exclusion of all coordinate tribunals.”).
According to Calhoun, her claims in the Wilcox County action “simply are not based upon [Attenta’s] failure to comply with [the Marengo Circuit Court’s] June 1, 2005, order directing that [Linden] and Attenta pay worker’s compensation benefits.” Calhoun’s brief, at 16. She says that the Marengo Circuit Court did not have exclusive jurisdiction of this dispute, because, she asserts, the resolution of her tort-of-outrage claim did not require the Wilcox County jury to determine whether she was entitled to benefits after September 21, 2007, the date on which Attenta discontinued the monthly death-benefit payments. However, Calhoun’s assertions are belied by her pleadings in the Wilcox County action.
As the basis of her tort-of-outrage claim, Calhoun’s complaint alleged expressly that Attenta “unlawfully],” and “in direct violation of the June 1, 2005 order of the Circuit Court of Marengo County,” discontinued worker’s compensation death-benefit payments “with the intent to cause [her] severe emotional distress and financial extortion.” As the basis for her fraud claim, Calhoun quoted from the Marengo Circuit Court’s order on the worker’s compensation claim and alleged that Attenta fraudulently “represented to the court and to [her] that worker’s compensation death benefit payments would be made pursuant to this order.” (Emphasis added.)
The strategy Calhoun employed during the trial in the Wilcox County action reinforced her reliance in her complaint on the order on her worker’s compensation claim in the Marengo County action. For example, during her case-in-chief, Calhoun called to the witness stand Tiffany Cahill, a claims adjuster for Attenta. During Ca-hill’s testimony, the following colloquy occurred:
“Q. [By Calhoun’s counsel:] ... After the Circuit Court of Marengo County entered an order that death benefits had to be paid, was that order provided to you?
“A. [By Cahill:] Yes, sir.
“Q. And did you then start sending out checks pursuant to that order?
“A. Yes, sir.
“Q. So, there’s no question, you received the June 1, 2005, order?
“A. Yes, sir.
“Q. And you started sending out checks pursuant to that order?
“A. Yes, sir.
*147 [[Image here]]
“Q. And at some point, you stopped paying the checks, right?
[[Image here]]
“A. Yes, sir.
“Q. And prior to the stop payment on these dependent checks, the payments that you had made to [Calhoun] had been made pursuant to a court order issued by the Circuit Court of Maren-go County, correct?
“A. Yes, sir.
“Q. And you never received an order from the Circuit Court of Marengo County telling you to stop the dependent payments, did you?
“A. No, sir.
“Q. Did [Linden’s counsel] ever tell you that they had an order from the Marengo County Circuit Court to stop payments on those checks?
“A. No, sir.
“Q. The payments were stopped without an order from the Court of Mar-engo County, correct?
“A. Yes, sir.”
(Emphasis added.)
Attenta’s response in its motion for a judgment as a matter of law was that “[t]he cessation of ... payments was lawful under the [order], which provided for [Linden’s] statutory right to credit against its death benefit liability in the event of a third-party settlement. Because the third-party settlement amount was greater than [Linden’s] remaining liability, [Linden] and Attenta had no further liability for ... benefits.” (Emphasis added.) In support of that argument, Attenta cited the principle adopted in this state that an “ ‘actor is never liable ... where he has done no more than to insist upon his legal rights in a permissible way.’ ” American Road Serv. Co. v. Inmon, 394 So.2d 361, 368 (Ala.1980) (quoting Restatement (Second) of Torts § 46 comment (g) (1948)). See also BellSouth Mobility, Inc. v. Cellulink, Inc., 814 So.2d 203, 215 (Ala.2001) (“ ‘Whatever a man has a legal right to do, he may do with impunity, regardless of motive, and if in exercising his legal right in a legal way damage results to another, no cause of action arises against him because of a bad motive in exercising the right.’ ” (quoting Texas Beef Cattle Co. v. Green, 921 S.W.2d 203, 211 (Tex.1996))).
It is abundantly clear, therefore, that Calhoun’s alleged right to death-benefit payments after September 2007 was the threshold issue in the Wilcox County action and was inextricably intertwined with the subrogation aspect of the June 1, 2005, order in the first-filed Marengo County action. In other words, the Marengo Circuit Court, having first taken cognizance of the cause, had “the exclusive right to entertain and exercise such jurisdiction, to the final determination of the action and the enforcement of its judgments and decrees,” Grimes, 726 So.2d at 617, including any dispute regarding the existence and legal effect of any settlement with third parties, such as West and Forest Products. Consequently, the Wilcox Circuit Court exceeded its authority in asserting jurisdiction over this action.

III. Conclusion

The complaint filed in the Wilcox County action failed to invoke the subject-matter jurisdiction of the Wilcox Circuit Court; therefore, the judgment entered in the Wilcox County action against Attenta is void. “ ‘A judgment entered by a court lacking subject-matter jurisdiction is absolutely void and will not support an appeal; an appellate court must dismiss an attempted appeal from such a void judgment.’ Vann v. Cook, 989 So.2d 556, 559 (Ala.Civ.App.2008).” MPQ, Inc. v. Birmingham Realty Co., 78 So.3d 391, 394 (Ala.2011). Accordingly, we vacate the *148 judgment and dismiss the case and the appeal.
JUDGMENT VACATED; CASE DISMISSED; AND APPEAL DISMISSED.
MALONE, C.J., and BOLIN, MURDOCK, and MAIN, JJ., concur.

. The ultimate disposition of the Marengo County action and the timing of that disposition are not entirely clear from the record, although it is clear that the Marengo County action was pending when the complaint on the Wilcox County action was filed.