42 So.2d 617

MOUNT OLIVE PRIMITIVE BAPTIST CHURCH et al. v. PATRICK et al.

6 Div. 851.

Supreme Court of Alabama.

Oct. 6, 1949.

Rehearing Denied Nov. 17, 1949.

Kilpatrick & Entrekin, Cullman, for appellant.

Finis E. St. John, Cullman, for appellees.

SIMPSON, Justice.

This case involves a factional dispute in the congregation of the Mount Olive Primitive Baptist Church, an unincorporated association, wherein appellants R. F. Copeland and J. P. Copeland were ousted from membership without notice and the latter Copeland deposed from official connection in the church. These two appellants and the other dissident members named as parties plaintiff sought by the bill of complaint (filed against defendants, as officers and pastor of the church) relief against such action and to have themselves reinstated as members or as officers of the church and to have restored to them the church property under the averment that they were the true doctrinaires of the Primitive Baptist faith. No other rights are claimed.

The schism was initiated by the exclusion of R. F. Copeland, all other contended irregularities having had their roots in this alleged misconduct, and decision turns there. The basis on which relief is sought is the contention that the fundamental tenets of Primitive Baptists were violated (1) in thus exscinding R. F. Copeland and (2) in discharging J. P. Copeland and in receiving new members into the congregation when the church was allegedly in "confusion," meaning having been thrown into disorder by this expulsion of R. F. Copeland, thereby rendering it unlawful under the doctrines and practices of the church to transact any business until the church should be again "in peace," namely, expurgated of the alleged unlawful conduct by resorting to proper church procedure.

The guiding rule is that courts will not interfere with factional differences arising in an ecclesiastical body unless it clearly appears "that the purpose of the majority or governing body is to make a gratuitous transfer of the property of the society to another denomination, or to disavow and depart from the characteristic, distinctive doctrines and practices, and de-

vote the use of the property to doctrines radically opposed to the distinctive doctrines and practices of the society." Mitchell v. Church of Christ, 221 Ala. 315, 318, 128 So. 781, 783, 70 A.L.R. 71; Caples v. Nazareth Church, 245 Ala. 656, 659, 18 So.2d 383.

◼ A corollary to this general rule is that the civil courts will not interfere in case of a division in a religious society unless property rights are affected, nor even then if the basis of the schism is due merely to a disparate interpretation of doctrine. Such matters must be settled by the society itself. Gewin v. Mt. Pilgrim Baptist Church, 166 Ala. 345, syl. 3, 4, 51 So. 947, 139 Am.St.Rep. 41.

◼ So, we will not undertake to rationalize the claimed fundamental differences which gave rise to the disaffection in the Mount Olive congregation. It is sufficient to say that the court, if it would, could not determine with the slightest degree of accuracy that the method of exclusion of Copeland from membership was that radical departure of doctrine to justify court action. In the first place, the evidence is uncontradicted that for some offenses a member may be excluded without notice and it is not made too clear just whether or not the offense for which Copeland was excluded was that character of offense. And in the second place, it is established in this jurisdiction, and we think generally, that the courts will not intervene to settle a dispute regarding the right of membership.

A case bearing much similarity is the Caples case, supra, which, in reaffirming the long-established rule enunciated in Bouldin v. Alexander, 15 Wall. 131, 82 U.S. 131, 21 L.Ed. 69, quoted the following from that case: " * * * we [the courts] have no power to revise or question ordinary acts of church discipline, or of excision from membership. We have only to do with rights of property. * * * We cannot decide who ought to be members of the church nor whether the excommunicated have been regularly or irregularly cut off. We must take the fact of excommunication as conclusive proof that the persons exscinded are not members * * *. In a

congregational church, the majority, if they adhere to the organization and to the doctrines, represent the church." 245 Ala. 660, 18 So.2d 386. See also Gewin v. Mt. Pilgrim Baptist Church, supra; Hundley v. Collins, 131 Ala. 234, 32 So. 575, 90 Am. St.Rep. 33; Tucker v. Denson, 202 Ala. 308, 80 So. 373; Mitchell v. Church of Christ, supra.

As regards this precise question, it was said in Gewin v. Mt. Pilgrim Baptist Church, supra, 166 Ala. 349, 51 So. 948: " * * * the courts have no power to revise ordinary acts of church discipline or pass upon controverted rights of membership. Hundley v. Collins, 131 Ala. 234, 32 So. 575, 90 Am.St.Rep. 33."

We think the court would be treading on most dangerous ground and invading a sanctuary not set apart for its jurisdiction if it should permit dissident minorities, believing themselves to have been improperly excluded because of the procedure by which they were exscinded, to invoke its power to determine such a factional dispute. Much the same was the holding in Hundley v. Collins, supra, 131 Ala. 243, 32 So. 578, where it was said:

"Admitting, therefore, * * * that petitioner had no notice of this proceeding [wherein he was expelled], and that it was irregular according to common usage, the church being independent, and not subject to higher powers, and being a law unto itself for its own procedure in religious matters what it did towards the expulsion of petitioner was not unlawful, even if it was not politic and wise.

* * * * * *

" 'It is of the essence of these religious unions, and of their right to establish tribunals for the decisions of questions arising among themselves, that those decisions should be binding in all cases of ecclesiastical cognizance, subject only to such appeal as the organism itself provides for. * * * In this class of cases we think the rule of action which should govern the civil courts, founded in a broad and sound view of the relations of church and state under our system of laws, and supported by a preponderating weight of judicial authority is, that whenever the questions of discipline or of faith, or ec-

clesiastical rule, custom, or law have been decided by the highest of these church judicatories to which the matter has been carried, the legal tribunals must accept such decisions as final, and as binding on them, in their application to the case before them.'"

In the instant case the church, through its congregation, was the final arbiter, no action by a higher body having been taken. The lower court therefore correctly held that the matters complained of were not of that character which allowed court intervention.

Affirmed.

BROWN, FOSTER, and LAWSON, JJ., concur.