[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1213 
These four appeals arise from the certification by the Barbour Circuit Court of a "subclass" for purposes of approving a settlement in a class action filed against Liberty National Life Insurance Company and Torchmark Corporation, its parent company (collectively "Liberty National"). Because the trial court lacked subject-matter jurisdiction to certify the subclass and to enter a final judgment approving the settlement, we vacate the trial court's judgment and dismiss the appeals.
 Facts and Procedural History
This decision is at least the fifth opinion by this Court in the last 13 years addressing claims of a class of holders of cancer-insurance policies sold by Liberty National.[1] The most recent of those decisions, Ex parte Liberty National LifeInsurance Co., 888 So.2d 478 (Ala. 2003), includes the following facts and procedural history relevant to the present case:
 "Barbara Roberts, Duane Johnson, and Mary Nalley sued Liberty National in the Choctaw Circuit Court, alleging breach of contract, unjust enrichment, misrepresentation, and suppression. The action was brought on behalf of them and a class of persons who were *Page 1214 
the insureds under certain types of cancer-insurance policies sold by Liberty National (hereinafter `the plaintiffs'). The plaintiffs alleged that Liberty National failed to inform them that it had closed their block of insurance policies and that Liberty National had actively misrepresented the reasons for the increase in the amount of their premiums.
 "The plaintiffs were all members of the class certified in Adams v. Robertson, 676 So.2d 1265
(Ala. 1995). Robertson, a class action filed in the Barbour Circuit Court, involved over 400,000 policyholders of Liberty National Life Insurance Company cancer insurance (hereinafter the `Robertson
class'). The Robertson class alleged that Liberty National Life Insurance Company had fraudulently encouraged them to switch their insurance policies (`the old policies') for new policies that provided less coverage (`the new policies'). The Robertson
class included both persons who had switched to the new policies and those who had retained their old policies. The action was settled, and the settlement, as modified, was approved by the trial court; its order was affirmed by this Court.
 "The settlement required Liberty National Life Insurance Company to offer to the members of the Robertson class insurance policies with substantially all of the benefits of the old and new policies; it also prevented Liberty National Life Insurance Company from increasing premiums on the policies for three years and from ever increasing premiums by an amount that would result in a loss ratio of less than 55%. These `special policies'[2] were never offered to persons outside the Robertson class. After three years, the premiums for the Robertson
class increased substantially, but never exceeded the limit set forth in the Robertson settlement.
 "After Liberty National Life Insurance Company increased the premiums, the plaintiffs filed this action in the Choctaw Circuit Court against Liberty National, seeking another class certification. In response, Liberty National filed a motion to dismiss or, in the alternative, for a summary judgment. The basis of its motion was 1) that the Robertson settlement gave the Barbour Circuit Court continuing jurisdiction over matters related to the Robertson
settlement and its enforcement and that, therefore, the Choctaw Circuit Court lacked subject-matter jurisdiction, 2) that the current action was barred by the res judicata effect of Robertson, and 3) that the claims now being asserted by the plaintiffs had been released as a part of the Robertson
settlement. The court denied the motion.
 "Liberty National then filed a motion to alter, amend, or vacate the order denying its motion or, in the alternative, to certify the order for an interlocutory appeal, pursuant to Rule 5, Ala. R.App. P. The court denied that motion as well. Liberty National now seeks a writ of mandamus ordering the trial judge either to dismiss the action or to certify for an interlocutory appeal his denial of its motion to dismiss.
 "[2] Duane Johnson, one of the plaintiffs, did not switch to the `special policy' created by the Robertson settlement. Instead, he retained his `old policy.' Nonetheless, the Robertson
settlement adjudicated the relief to be afforded to Robertson class members who had `old policies.' The Robertson settlement gave them the option to exchange their `old policies' for `special policies.'"
888 So.2d at 479-80.
This Court granted Liberty National's petition for a writ of mandamus directing *Page 1215 
the Choctaw Circuit Court to dismiss the action. This Court concluded that because "[t]he Barbour Circuit Court [had] expressly retained continuing jurisdiction over matters relating to the Robertson settlement and the enforcement of that settlement" "the Choctaw Circuit Court [did] not have jurisdiction to hear this action, which [was] essentially an attack in another circuit court on the Robertson
settlement." 888 So.2d at 481.
On December 30, 2003 — the date of this Court's decision in Liberty National — the plaintiffs inLiberty National (hereinafter referred to as "the Roberts plaintiffs") initiated the present action by filing in the Barbour Circuit Court a complaint identical to the complaint they had filed in the Choctaw Circuit Court.[2] The action was designated in the Barbour Circuit Court as case no. CV-03-137.
Liberty National filed a motion to dismiss, asserting, among other things, that the Roberts action in case no. CV-03-137 was barred by the pendency of the Robertson action in case no. CV-92-021 in the Barbour Circuit Court and by that court's retention of continuing jurisdiction over all matters "relating to" the settlement in case no. CV-92-021.[3] Before that motion was ruled upon, however, Liberty National and the Roberts plaintiffs submitted a proposed class settlement to the Barbour Circuit Court for its preliminary approval. The proposed settlement defined the class (hereinafter referred to as "the Roberts class" or "the Roberts subclass"[4]) as:
 "All persons who currently own any Liberty National cancer policy providing benefits for radiation, chemotherapy, prescription chemotherapy drugs, or other out-of-hospital prescription drugs without monetary limits, either by virtue of the policy's written terms or by virtue of any prior judicial decree, and all other persons who currently own a Liberty National cancer policy that was placed in the same pool of policies for rate making purposes with [the cancer policies of the] Named Plaintiffs [Roberts, Johnson, Nalley, and Abston]."[5]
The primary feature of the proposed settlement was a "new benefit procedure" for the cancer policies held by members of the Roberts class. Since the Robertson settlement, Liberty National generally has paid benefits under the cancer policies according to the amount stated on the medical bill of a policyholder. The new benefit procedure, however, defined the terms *Page 1216 
"usual and customary charge" and "reasonable and customary charge" — as those terms are used in the policies held by members of the Roberts class — as limiting benefit payments to the Medicare-approved amount for medical expenses or treatments covered by the policy.[6] The new benefit procedure was an effort to reduce the amount of premiums due from policyholders by reducing the amount of benefits Liberty National paid under the policies.[7]
On May 11, 2004, the trial court in case no. CV-03-137 entered an order preliminarily approving the settlement and the proposed class under Rules 23(a), 23(b)(1)(A), 23(b)(1)(B), and 23(b)(2), Ala. R. Civ. P. The trial court's order included a notice to be sent to members of the Roberts class informing them that a settlement had been proposed and that a hearing regarding the fairness of the settlement was scheduled for July 15, 2004. Among other things, the notice also informed the members of the Roberts class of their rights to object, to be heard, to present evidence, to retain counsel, and to attend the fairness hearing.
Notice was mailed to the last known address of each of the members of the Roberts class, which numbered roughly 50,000. Approximately 80 members of the Roberts class objected, including each of the appellants.[8]
In particular, Charlie Frank Robertson — one of the appellants here and the named representative of theRobertson class — filed an objection to the class certification and settlement. Among other things, Robertson contended, as this Court held in Liberty National, that the claims of the Roberts class "related to" the settlement in case no. CV-92-021 and that, therefore, the Barbour Circuit Court did not have subject-matter jurisdiction to entertain the claims of the Roberts class outside the pending Robertson
action in case no. CV-92-021. Robertson argued that the Roberts action was due to be dismissed, and, citing Grimes v. LibertyNational Life Insurance Co., 726 So.2d 615 (Ala. 1998), Robertson requested that the trial court enforce the injunction in the settlement agreement in case no. CV-92-021 that prohibited members of the Robertson *Page 1217 
class from "`filing, initiating, asserting, maintaining, pursuing, or continuing or participating as a litigant (by intervention or otherwise) in any action, whether an individual lawsuit or class action, in any court, asserting any of the claims dismissed [in case no. CV-92-021] or any of the Released Claims as defined in the . . . Settlement.'" Grimes,726 So.2d at 616 (quoting the judgment in case no. CV-92-021);Robertson, 676 So.2d at 1306.
At the hearing on July 15, 2004, the trial court heard from counsel appearing on behalf of the Roberts class, Liberty National, and several objectors. The court also heard from objectors appearing without counsel. The court appointed a special master to meet with the objectors, to analyze their objections, and then to report to the court.[9] The trial court adjourned the hearing and scheduled it to reconvene on September 23, 2004.
At the reconvened hearing on September 23, 2004, the trial court again heard from counsel for the parties and several objectors, as well as individual objectors appearing without counsel.
On November 22, 2004, the trial court, in a 44-page order, entered findings of fact and conclusions of law regarding the proposed settlement. In that order, the trial court, sua sponte, purported to "consolidate" the Roberts action (case no. CV-03-137) with the Robertson action (case no. CV-92-021) and designated the Roberts class as a "subclass" of the Robertson class. Among other things, the trial court concluded that all the necessary prerequisites for maintenance of a class action under Rule 23, Ala. R. Civ. P., and § 6-5-641, Ala. Code 1975, had been met and that the proposed settlement was "fair, reasonable, and adequate." The trial court entered a separate final judgment approving the settlement.
Counsel for the Robertson class timely filed a motion to alter, amend, or vacate the court's final judgment approving the settlement. Other objectors joined the motion. The circuit court denied the motion on February 1, 2005. Objectors to the settlement timely filed four separate notices of appeal; the defendants and the plaintiffs in the Roberts action are appellees in those appeals.[10]
 Discussion
The appellants contend that the trial court lacked subject-matter jurisdiction *Page 1218 
over the claims asserted by the Roberts plaintiffs. The appellants advance a number of arguments in that regard, but it is necessary to address only one of the arguments raised — the argument that because the Roberts plaintiffs' claims are a collateral attack on case no. CV-92-021 and because of the continuing jurisdiction reserved by the trial court in case no. CV-92-021, the trial court lacked subject-matter jurisdiction to adjudicate the claims of the Roberts plaintiffs outside case no. CV-92-021. The appellants contend that because the trial court did not have subject-matter jurisdiction to consider case no. CV-03-137, the trial court's actions and orders in case no. CV-03-137 are void. We agree.
We review de novo whether the trial court had subject-matter jurisdiction. State Dep't of Revenue v. Arnold,909 So.2d 192, 193 (Ala. 2005). The appellants cite this Court's holding in Liberty National: "Because the Barbour Circuit Court has jurisdiction over matters relating to theRobertson settlement and its enforcement and because the current action relates to the Robertson settlement and its enforcement, . . . the Choctaw Circuit Court does not have subject-matter jurisdiction." 888 So.2d at 481. The appellants also rely on this Court's conclusion in Liberty National
that the claims presented by the Roberts plaintiffs in the Choctaw Circuit Court were an impermissible collateral attack on the judgment in case no. CV-92-021. 888 So.2d at 481 ("[T]he current action essentially attempts to attack collaterally in another circuit court portions of the Robertson
settlement."). Even though the current Roberts action was filed in the Barbour Circuit Court, the appellants argue that the action in case no. CV-03-137 remained an independent action throughout the proceedings in the Barbour Circuit Court. Thus, the appellants contend, the Roberts action in case no. CV-03-137 is an impermissible collateral attack on the judgment in case no. CV-92-021. We agree.
As noted, the complaint filed in case no. CV-03-137 is identical to the complaint the Roberts plaintiffs filed in the Choctaw Circuit Court in Liberty National. This Court in Liberty National described the Roberts plaintiffs' claims in the Choctaw Circuit Court as "essentially attempt[ing] to attack collaterally in another *Page 1219 
circuit court portions of the Robertson settlement" because those claims sought to "attack . . . aspects of theRobertson settlement . . . [that] were litigated atthe fairness hearing, approved by the trial court, and reviewedby this Court" in Robertson. Liberty National,888 So.2d at 481 (emphasis added). This Court then stated:
 "This type of collateral attack is not permitted. The boundary lines between courts of concurrent jurisdiction must be preserved. `"`[W]here two courts have equal and concurrent jurisdiction, the court that first commences the exercise of its jurisdiction in a matter has the preference and is not to be obstructed in the legitimate exercise of its powers by a court of coordinate jurisdiction.'"' Ex parte First Nat'l Bank of Jasper, 717 So.2d 342, 350 (Ala. 1997) (quoting Ex parte Liberty Nat'l Life Ins. Co., 631 So.2d 865, 867 (Ala. 1993), quoting in turn Ex parte State ex rel. Ussery, 285 Ala. 279, 281, 231 So.2d 314, 315 (1970))."
888 So.2d at 481.
As the appellants argue, unless brought within theRobertson action in case no. CV-92-021, the claims of the Roberts plaintiffs asserted as a separate action — whether filed in the Choctaw Circuit Court or the Barbour Circuit Court — are an impermissible collateral attack on the Robertson settlement. See Manning v.Wingo, 577 So.2d 865, 866-68 (Ala. 1991) (rejecting a separate action seeking to set aside a prior judgment of the Autauga Circuit Court; the separate action, even though filed in the same circuit court that had rendered the judgment under attack, nevertheless was an impermissible collateral attack).
The Roberts plaintiffs contend, however, that filing their action in the Barbour Circuit Court corrected the jurisdictional problem noted in Liberty National, and Liberty National contends that any error resulting from the failure of the Roberts plaintiffs to bring their claims withinRobertson either was harmless or was cured by the trial court's sua sponte consolidation of the Roberts action withRobertson. Liberty National argues that the Roberts action was brought before the circuit court having continuing jurisdiction over Robertson and was ruled upon and consolidated with Robertson expressly in accordance with that continuing jurisdiction. In short, Liberty National argues that any procedural error in the Roberts plaintiffs' filing a separate action in the Barbour Circuit Court rather than asserting their claims within case no. CV-92-021 was "more cosmetic than substantive." See Filer v. Filer,502 So.2d 698, 700 (Ala. 1987) ("Although a motion to enforce the divorce decree might have been preferable to a second suit, this error is more cosmetic than substantive."). We disagree.
In Filer, Betty Filer and Alvin Filer were divorced in 1982, and the divorce judgment required that the Filers' residence be sold and the proceeds divided equally.502 So.2d at 698-99. Three months after the divorce, however, Alvin filed a petition in the court that had entered the divorce judgment; Alvin alleged that Betty had rejected an offer to sell the residence, and Alvin sought a reduction in his alimony and child-support obligations. The trial court granted Alvin's petition, but the court found that Betty "was not in contempt of court as to her rejection of the offer to buy the house."502 So.2d at 699.
In 1983, Betty filed a petition to modify the divorce judgment; Alvin cross-petitioned and alleged that Betty "was frustrating attempts to sell the house." *Page 1220 502 So.2d at 699. On February 24, 1984, the trial court dismissed Alvin's cross-petition without prejudice.
When the residence remained unsold, Alvin brought a separate action in May 1984 to compel its sale, and the trial court granted Alvin's subsequent motion for sale. The residence was then sold at auction, and the trial court approved the sale.502 So.2d at 699-700.
Among other things, this Court rejected Betty's argument on appeal that Alvin's 1984 action to compel the sale of the house was an impermissible collateral attack on the 1982 divorce judgment. In particular, Betty argued that the 1984 action "was not the proper vehicle for seeking enforcement of the provision of the divorce decree pertaining to the sale of the residence."502 So.2d at 700. This Court stated, however, that "[a]lthough a motion to enforce the divorce decree might have been preferable to a second suit, this error is more cosmetic than substantive."502 So.2d at 700.
In that regard, however, Filer is distinguishable from the present case. First, this Court has already described the Roberts plaintiffs' claims as a collateral attack on theRobertson settlement.
Second, unlike this case, in which the appellants vigorously object to the trial court's exercise of jurisdiction in case no. CV-03-137, in Filer "[b]oth parties to [the appeal]concede[d] that the court had jurisdiction tohear the case."[11] 502 So.2d at 700 (first emphasis added). This Court emphasized that
 "[t]he Circuit Court of Jefferson County had jurisdiction in this case, whether the form of the action was a motion to enforce the divorce judgment or a separate suit. Mrs. Filer was not prejudiced simply because Mr. Filer chose to file a separate suit. Regardless of form, the relief which Mr. Filer sought under either procedure was to get the parties' property sold."
502 So.2d at 700 (emphasis added).
Third, there is no indication the 1982 divorce judgment inFiler included a reservation of continuing jurisdiction over all matters "relating to" the divorce judgment or a permanent injunction prohibiting the Filers from instituting in "any court" a separate action involving matters related to the judgment. In this case, however, the final judgment in case no. CV-92-021 reserved jurisdiction over all matters "relating to [its] Settlement." This Court in LibertyNational concluded that the Robertson settlement prevented the Choctaw Circuit Court from obtainingsubject-matter jurisdiction over the claims of the Roberts plaintiffs (which we have noted were identical to the claims presented by the Roberts plaintiffs in their complaint in case no. CV-03-137):
 "The Robertson settlement provided that the Barbour Circuit Court reserved and maintained
 "`continuing jurisdiction over all matters relating to the Settlement or the consummation of the Settlement; the validity of the Settlement; the construction and enforcement of the Settlement and any orders entered pursuant thereto; . . . and all other matters pertaining to the Settlement or its implementation and enforcement.'
 "Robertson, 676 So.2d at 1307. Thus, the Barbour Circuit Court in Robertson *Page 1221 
expressly retained continuing jurisdiction over matters `relating to' the Robertson settlement and the enforcement of that settlement.
 "This action involves matters `relating to' the Robertson settlement and its enforcement. . . .
 ". . . .
 "The Barbour Circuit Court expressly retained continuing jurisdiction over matters relating to the Robertson settlement and the enforcement of that settlement. Therefore, the Choctaw Circuit Court does not have jurisdiction to hear this action, which is essentially an attack in another circuit court on the Robertson settlement."
888 So.2d at 480-81 (emphasis added).
Simply refiling in the Barbour Circuit Court the complaint they had filed in the Choctaw Circuit Court did not remove the jurisdictional bar imposed by the final judgment in case no. CV-92-021. Rather than seeking to have the Barbour Circuit Court address the claims asserted by the Roberts plaintiffs within case no. CV-92-021 as matters related to the Robertson
settlement, the Roberts plaintiffs sought certification of a new "class" in an independent action.[12] Until its sua sponte "consolidation" of case no. CV-03-137 into case *Page 1222 
no. CV-92-021 in its order of final judgment, the trial court did not purport to act under its reserved continuing jurisdiction in case no. CV-92-021. The consolidation order, however, did not solve the jurisdictional problem created by the Roberts plaintiffs' presenting their claims in an action independent from case no. CV-92-021.
The appellants point out that when two or more actions are consolidated under Rule 42, Ala. R. Civ. P., the actions do not lose their separate identities. League v. McDonald,355 So.2d 695, 697 (Ala. 1978). Moreover, "[a]n order of consolidation does not merge the actions into a single [action], change the rights or the parties, or make those who are parties to one [action] parties to another." Jerome A. Hoffman, AlabamaCivil Procedure § 5.71 (2d ed.2001) (citing Evers v.Link Enters., Inc., 386 So.2d 1177 (Ala.Civ.App. 1980)). Finally, "`in consolidated actions . . . the parties and pleadings in one action do not become parties and pleadings in the other.'"Ex parte Flexible Prods. Co., 915 So.2d 34, 50
(Ala. 2005) (quoting league v. Motes, 57 Ala.App. 609,613, 330 So.2d 434, 438 (Civ.1976)). Thus, the trial court's sua sponte "consolidation" order did not change the status of case no. CV-03-137 from an independent action to a properly brought action within the Barbour Circuit Court's continuing jurisdiction under case no. CV-92-021. Consequently, the trial court did not have subject-matter jurisdiction over case no. CV-03-137, and its order of consolidation was void — indeed, any action it took in case no. CV-03-137, other than a dismissal of the claims, was void. Gulf Beach Hotel, Inc. v. State,935 So.2d 1177, 1182 (Ala. 2006) ("Where `the trial court ha[s] no subject-matter jurisdiction, [it has] no alternative but to dismiss the action.' State v. Property at 2018 RainbowDrive, 740 So.2d 1025, 1029 (Ala. 1999). `"Any other action taken by a court lacking subject matter jurisdiction is null and void."' Id. (quoting Beach v. Director ofRevenue, 934 S.W.2d 315, 318 (Mo.Ct.App. 1996)).").[13]
 Conclusion
The judgment of the trial court is vacated, and the appeals are dismissed.
JUDGMENT VACATED; APPEALS DISMISSED.
NABERS, C.J., and SEE, HARWOOD, WOODALL, STUART, and BOLIN, JJ., concur.
LYONS and PARKER, JJ., recuse themselves.
[1] Prior decisions of this Court related to the present case include: Ex parte Liberty National Life Insurance Co.,388 So.2d 478 (Ala. 2003); Grimes v. Liberty National LifeInsurance Co., 726 So.2d 615 (Ala. 1998); Adams v.Robertson, 676 So.2d 1265 (Ala. 1995); and Ex parteLiberty National Life Insurance Co., 631 So.2d 865
(Ala. 1993).
[2] The plaintiffs in Liberty National and in this case include Barbara J. Roberts, Duane Johnson, and Mary E. Nalley. Roberts, Johnson, and Nalley later amended the complaint in this action to include Raymond A. Abston as a named plaintiff. The members of the class the Roberts plaintiffs sought to represent are actually those members of the class originally certified in Robertson — which we refer to as "theRobertson class" — whose cancer polices have not lapsed or otherwise ceased to be in effect.
[3] Liberty National also argued that under this Court's reasoning in Liberty National the doctrine of res judicata barred the Roberts action.
[4] As we discuss, the trial court in this case purported to "consolidate" the Roberts class action with theRobertson class action and then designated the Roberts plaintiffs' class as a "subclass" of the originalRobertson class. See also supra note 2.
[5] The parties to this appeal agree that the only individuals who meet this class definition are the remaining members of theRobertson class whose policies are still in effect. Thus, the Roberts class, in a sense, is the Robertson
class.
[6] The proposed settlement included exceptions to the Medicare-approved-amount limit. For example, the settlement included provisions to ensure that policyholders not eligible for Medicare or covered by primary health insurance would not incur any out-of-pocket expenses as a result of the new benefit procedure. In addition, policyholders who had received treatment for cancer within 60 days preceding the effective date of the new benefit procedure were entitled for 12 months after final approval of the settlement to continue receiving benefits in the same manner that Liberty National had previously calculated benefits.
[7] The proposed settlement included other provisions. For example, Liberty National agreed not to raise premiums for 13 months after the settlement was approved. Additionally, theRobertson settlement allowed Liberty National to increase premiums so long as the increases did not result in a loss ratio less than 55%, but the proposed settlement raised the "loss ratio" to 85%. As we understand it, based on the parties' explanations, the 85% loss-ratio provision in simplified terms means that for every dollar brought in as premium, the proposed settlement would require Liberty National to pay out at least 85 cents. See Black's Law Dictionary 965 (8th ed.2004) (defining "loss ratio" as "[t]he ratio between premiums paid and losses incurred during a given period").
The settlement also provided an attorney fee not to exceed $4,000,000 for the lawyers representing the Roberts class.
[8] Richard Solomon, an appellant in case no. 1040816, died while these appeals were pending. See Rule 43, Ala. R.App. P.
[9] The trial court appointed the same special master who served in Robertson.
[10] The Roberts plaintiffs contend that this Court does not have jurisdiction over Ivan Smith's appeal (no. 1040927). They point out that the trial court's final order regarding class certification was entered on November 22, 2004, and they contend that Smith did not file a postjudgment motion to alter, amend, or vacate the final order. The Roberts plaintiffs argue that Smith's filing of his notice of appeal on March 15, 2005, was therefore untimely. We disagree.
As noted, the Robertson class timely filed a motion under Rule 59(e), Ala. R. Civ. P., which suspended the running of the time for filing a notice of appeal as to all parties. Rule 4(a)(3), Ala. R.App. P.; Wellcraft Marine, a Div. of GenmarIndus., Inc. v. Zarzour, 577 So.2d 414, 417 (Ala. 1990) ("The running of the time for taking an appeal is tolled as to all parties, not just the one who filed the post-judgment motion."). Thus, Smith's notice of appeal was timely filed within 42 days of the trial court's denial of the Rule 59(e) motion.
The Roberts plaintiffs also argue that all four appeals must be dismissed because the notice of appeal in each case named Liberty National and Torchmark as appellees but not the Roberts plaintiffs. The Roberts plaintiffs concede that each notice of appeal in this case met the literal requirements of Rule 3(c), Ala. R.App. P., which states that a notice of appeal "shall specify the party or parties taking the appeal; shall designate the judgment, order or part thereof appealed from; and shall name the court to which the appeal is taken."
However, the Roberts plaintiffs, citing Rule 2(a)(2)(D) and Rule 3(d)(1), Ala. R.App. P., maintain that the objectors' appeals are nonetheless due to be dismissed. Rule 3(d)(1) requires the clerk of the trial court to serve a copy of the notice of appeal on counsel of record for each party and requires the appellant to serve a copy of the notice of appeal on each adverse party. Although Smith claims he in fact served the Roberts plaintiffs with a copy of his notice of appeal, the Roberts plaintiffs allege they were not served in compliance with that rule. The Roberts plaintiffs argue that the alleged failure to be served with a copy of the notices of appeal constitutes, under Rule 2(a)(2)(D), a failure by the appellants to "comply substantially with [the Rules of Appellate Procedure]" that warrants dismissal of the appeals. We disagree.
Before an appeal may be dismissed under Rule 2(a)(2)(D), the party in default must be notified of the deficiency and given an opportunity to correct it. Rule 2, Ala. R.App. P. In this case, any alleged deficiency in service of the notices of appeal or in the naming of appellees was corrected within two months of the filing of the first notice of appeal and before the briefing schedule was established in these appeals. Moreover, the Roberts plaintiffs filed a brief as an appellee in each appeal. Thus, any alleged failure on the part of the appellants to "comply substantially with [the Rules of Appellate Procedure]" has been corrected, and the Roberts plaintiffs have suffered no prejudice.
[11] In noting this distinction, however, we do not suggest that the parties to an action may waive the issue whether the court has subjectmatter jurisdiction.
[12] Robertson asserts an additional related argument that also makes Filer distinguishable. In Filer, both parties to the 1982 divorce judgment had notice of the later filed action by Alvin from the time he filed it — indeed, Alvin's action named Betty as a defendant and could not have proceeded without Betty's being properly served with notice of the action. Filer, 502 So.2d at 699-700.
However, Robertson argues that because the Roberts plaintiffs filed an independent action in Barbour County rather than proceeding within case no. CV-92-021, no notice was provided to Robertson until the Roberts action in case no. CV-03-137 had reached the settlement stage. If the Roberts plaintiffs had instead attempted to proceed within case no. CV-92-021, Robertson maintains, because he was the named class representative and plaintiff in case no. CV-92-021, he would have been provided with notice of the claims of the Roberts plaintiffs before
the Barbour Circuit Court began considering the merits of those claims. See, e.g., Rule 5(a), Ala. R. Civ. P. Notice at the initiation of the Roberts proceedings, Robertson argues, would have allowed Robertson to challenge the Roberts plaintiffs' ability and right to act on behalf of the class — including, for example, the right to negotiate a settlement with Liberty National. See, e.g., In re Four Seasons Secs. LawsLitig., 525 F.2d 500 (10th Cir.1975).
Robertson argues that the Roberts plaintiffs in essence "usurped" Robertson's role as class representative and avoided the effect of the Barbour Circuit Court's determination in case no. CV-92-021, affirmed by this Court on appeal inRobertson, that Robertson was an adequate class representative — a determination Robertson contends the Roberts plaintiffs could not have successfully challenged in view of the law-of-the case doctrine. See Ex parteKing, 821 So.2d 205, 208-09 (Ala. 2001). See also In reIntegra Realty Res., 354 F.3d 1246, 1260-61 (10th Cir.2004); and Nedd v. Thomas, 47 F.R.D. 551, 555
(M.D.Pa.1969) ("There is no doubt [the doctrine of law of the case applies] to situations where parties to the same case seek to do battle on the same point once more."). In short, Robertson argues that the Roberts plaintiffs' prosecution of their claims in an action separate from case no. CV-92-021 resulted in the changing of Robertson's status — without notice to Robertson until after the change in status had occurred — from that of class representative to that of objector. Robertson does not dispute that he received notice of the settlement in case no. CV-03-137; indeed, he says his receipt of notice of the settlement is what prompted him to intervene in case no. CV-03-137. What he contends is that his status should not have been changed without notice to him before the change occurred.
Robertson's arguments regarding notice and the effect of the prior determination of his status as class representative raise important issues. However, our resolution of the appeals should permit Robertson — in the event the Roberts plaintiffs attempt to present their claims within case no. CV-92-021 — the opportunity to address those arguments to the Barbour Circuit Court.
[13] The appellants also raise a number of other objections to the trial court's certification and approval of the settlement in the Roberts action. However, our conclusion that the trial court lacked jurisdiction to adjudicate the Roberts plaintiffs' claims in an independent action rather than through case no. CV-92-021 pretermits consideration of the additional objections to the trial court's judgment.