PARKER, Justice
(concurring specially).
I agree with the majority that the application for rehearing filed by the Concerned Members of Old Elam Baptist Church (“the concerned members”) should be overruled. I write separately to emphasize that courts must navigate a veritable minefield whenever they involve themselves in church matters.
In earlier times, this Court held that issues of church membership and discipline were beyond the jurisdiction of the courts. In Gewin v. Mt. Pilgrim Baptist Church, 166 Ala. 345, 349, 51 So. 947, 948 (1910), this Court stated that “the courts have no power to revise ordinary acts of church discipline or pass upon controverted rights of membership.” Likewise, in Hundley v. Collins, 131 Ala. 234, 243-46, 32 So. 575, 578-79 (1902), this Court stated:
“Admitting, therefore, ... that petitioner had no notice of this proceeding [expelling him from church membership], and that it was irregular according to common usage, the church being independent, and not subject to higher powers, and being a law unto itself for its own procedure in religious matters what it did towards the expulsion of petitioner was not unlawful, even if it was not politic and wise....
“... [Wjhenever the questions of discipline or of faith, or ecclesiastical rule, custom, or law have been decided by the highest of these church judiciatories to which the matter has been carried, the legal tribunals must accept such decisions as final, and as binding on them, in their application to the case before them.”
Relying upon these principles, this Court stated in Mt. Olive Primitive Baptist Church v. Patrick, 252 Ala. 672, 674, 42 So.2d 617, 618 (1949): “[T]he civil *1098 courts will not interfere in a case of a division in a religious society unless property rights are affected, nor even then if the basis of the schism is due merely to a disparate interpretation of doctrine.” The Court in Mt. Olive Primitive Baptist Church did not directly address a situation in which membership and property rights are interrelated, such as when certain property rights are contingent upon church membership.
In Abyssinia Missionary Baptist Church v. Nixon, 340 So.2d 746 (Ala.1977), the Court seems to have expanded the circumstances in which the courts may intervene in church disputes. In that case, which involved the expulsion of a pastor, this Court held:
“[I]t is proper for the courts to inquire whether a congregational meeting, at which church business is to be transacted, was preceded by adequate notice to the full membership, and whether, once called, the meeting was conducted in an orderly manner and the expulsion was an act of the authority within the church having the power to order it.”
340 So.2d at 748. This Court further stated:
“We recognize here there are civil, as opposed to ecclesiastical, rights which have cognizance in the courts. A determination of whether the fundamentals of due process have been observed can be made in the judicial arena.”
340 So.2d at 748.
The problem with this approach is that it assumes that a church is bound to define due process in a manner similar to the way the courts define it. In Lott v. Eastern Shore Christian Center, 908 So.2d 922 (Ala.2005), this Court once again considered a case involving the termination of church membership and the right of an allegedly wrongfully terminated member to examine the church’s financial records. In that case we stated:
“The mere threat of expulsion, which is all the TRO [temporary restraining order] motion in this case involved, obviously did not involve an issue regarding a secular, or neutral, procedural defect. A challenge such as this one essentially alleges violation of a substantive right, such as a right to be free from the arbitrary action of an ecclesiastical body. However, the United States Supreme Court has clearly stated that no such right exists. Serbian Eastern Orthodox Diocese for the United States of America & Canada v. Milivojevich, 426 U.S. 696, 96 S.Ct. 2372, 49 L.Ed.2d 151 (1976).
“In Milivojevich, the Court considered whether the Illinois Supreme Court had properly invalidated the decision of the Holy Assembly of Bishops and the Holy Synod of the Serbian Orthodox Church (‘the Mother Church’) to ‘defrock’ Bishop Dionisije Milivojevich ‘on the ground that [the decision] was “arbitrary” because “a detailed review of the evidence disclose[d] that the proceedings resulting in Bishop Dionisije’s removal and defrockment were not in accordance with the prescribed procedure of the constitution and the penal code of the Serbian Orthodox Church.” ’ 426 U.S. at 718, 96 S.Ct. 2372, 49 L.Ed.2d 151. The Court held ‘that the inquiries made by the Illinois Supreme Court into matters of ecclesiastical cognizance and polity and the court’s action pursuant thereto contravened the First and Fourteenth Amendments.’ 426 U.S. at 698, 96 S.Ct. 2372, 49 L.Ed.2d 151. In doing so, it explained:
“ ‘The conclusion of the Illinois Supreme Court that the decisions of the Mother Church were “arbitrary” was grounded upon an inquiry that persuaded the Illinois Supreme Court *1099 that the Mother Church had not followed its own laws and procedures in arriving at those decisions. We have concluded that whether or not there is room for “marginal civil court review” under the narrow rubrics of “fraud” or “collusion” when church tribunals act in bad faith for secular purposes, no “arbitrariness” exception in the sense of an inquiry whether the decisions of the highest ecclesiastical tribunal of a hierarchical church complied .with church laws and regulations is consistent with the constitutional mandate that civil courts are bound to accept the decisions of the highest judicatories of a religious organization of hierarchical polity on matters of discipline, faith, internal organization, or ecclesiastical rule, custom, or law. For civil courts to analyze whether the ecclesiastical actions of a church judicatory are in that sense “arbitrary” must inherently entail inquiry into the procedures that canon or ecclesiastical law supposedly requires the church judicatory to follow, or else into the substantive criteria by which they are supposedly to decide the ecclesiastical question. But this is exactly the inquiry that the First Amendment prohibits; recognition of such an exception would undermine the general rule that religious controversies are not the proper subject of civil court inquiry, and that a civil court must accept the ecclesiastical decisions of church tribunals as it finds them....
[[Image here]]
“ ‘Indeed, it is the essence of religious faith that ecclesiastical decisions are reached and are to be accepted as matters of faith whether or not rational or measurable by objective criteria. Constitutional concepts of due process, involving secular notions of “fundamental fairness” or impermissible objectives, are therefore hardly relevant to such matters of ecclesiastical cognizance.’
“426 U.S. at 712-16, 96 S.Ct. 2372 (emphasis added [in Eastern Shore]; footnotes omitted). See also Kaufmann v. Sheehan, 707 F.2d 355 (8th Cir.1983); Green v. United Pentecostal Church Int’l, 899 S.W.2d 28 (Tex.Ct.App.1995).”
908 So.2d at 929-30 (footnote omitted).
Thus, the Court in Eastern Shore seems to have modified Abyssinia and has concluded that civil courts may not even require churches to employ judicial notions of due process in disciplining, suspending, or expelling members, and for good reason — civil courts have neither the competence nor the jurisdiction to judge the basis on which churches make such decisions. I disagree with any such attempted expansion of the courts’ role in ecclesiastical concerns. In the case at hand, a civil court might perceive the concerned members as exercising good stewardship by seeking to inspect church records to determine whether the leadership has engaged in fraud or financial mismanagement; the church leadership might view the same actions as sinful rebellion against church authority. This Court has no business taking sides in any such dispute.
' In overruling the concerned members’ application for rehearing, this Court has allowed the writ of mandamus to remain intact. That writ directs the trial court to vacate its order stating that the concerned members are members of the church and requiring the church leadership to allow them to inspect the church records. However, that writ did not disturb the trial court’s order that the concerned members be given the opportunity to present evi *1100 dence regarding the appropriate membership-termination authority in the church.
I write to note that even in this remaining portion of the trial court’s order, courts must be very careful not to overstep their bounds.