Rel: May 31, 2024

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**.  Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2023-2024

_____

### SC-2023-0830
_____

**Aldersgate United Methodist Church of Montgomery et al.**

**v.**

**Alabama-West Florida Conference of the United Methodist Church, Inc., et al.**

**Appeal from Montgomery Circuit Court
(CV-23-901547)**

PER CURIAM.

This appeal arises from a dispute between the Alabama-West

Florida Conference ("the Conference") of the United Methodist Church,

Inc. ("the UMC"), and 44 Methodist churches in the Conference ("the churches"). Amid growing tensions within the UMC over issues of human sexuality, the churches sought to leave the UMC with their properties under a specially enacted provision of the Book of Discipline -- the governing law of the UMC. After the Conference denied the churches the ability to vote to disaffiliate under that provision, the churches asked the Montgomery Circuit Court to order the Conference to grant them that vote. The trial court dismissed the suit for lack of subject-matter jurisdiction under the Establishment Clause of the First Amendment to the United States Constitution. Because this dispute centers on ecclesiastical questions, we affirm.

Facts and Procedural History

Aldersgate United Methodist Church of Montgomery and 43 other Methodist churches are affiliated with the UMC through the Conference, one of the subdivisions of the UMC. In 2023, the churches sought to disaffiliate from the UMC because they disagreed with the UMC's acceptance of homosexuality and its ordination of gay clergy.

Under the Book of Discipline -- the UMC's governing document -- the general rule is that a local church may disaffiliate but the UMC

retains title to the associated church property. Nevertheless, in 2019, amid increasing strife between local churches and the UMC over issues of sexuality, the UMC created an exception to that rule by enacting ¶ 2553. Under that provision, the UMC gave local churches a "limited right" to vote to disaffiliate from the UMC and retain their property if they were disaffiliating "for reasons of conscience" related to "the practice of homosexuality or the ordination or marriage of self-avowed practicing homosexuals." Paragraph 2553 specified that its unique disaffiliation process would expire on December 31, 2023. It also provided that each conference "may develop additional standard terms that are not inconsistent with" the other provisions of the paragraph.

In June 2023, the Conference shifted its stance, requiring churches in its jurisdiction seeking to disaffiliate under ¶ 2553 to submit an "eligibility statement." In its eligibility statement, a church would have to provide the Conference with the "reasons of conscience" related to the "actions or inactions" of the UMC with which it disagreed. The Conference would then evaluate those statements and decide whether to allow each church's congregation to vote on disaffiliation under ¶ 2553.

In accordance with that new requirement, each of the churches submitted an eligibility statement; but in September 2023, the Conference rejected those statements as insufficient under ¶ 2553. On October 31, 2023, the churches filed a complaint in the Montgomery Circuit Court against the Conference and several of its leaders -- Bishop David Graves and District Superintendents Debora Bishop, Mike Pearson, Jeff Wilson, and Jean Tippit -- asserting various claims, including ones for declaratory relief, breach of fiduciary duty, and breach of contract. Because of the looming December 31, 2023, deadline imposed by ¶ 2553, the churches also filed an application for temporary restraining order ("TRO") and a motion for preliminary injunction asking the trial court to compel the Conference to allow them to vote on disaffiliation at the annual conference on November 12. The court then held an emergency hearing and heard evidence ore tenus.

The next day, the court dismissed the suit for lack of subject-matter jurisdiction because, according to the court, the relief that the churches requested was "ecclesiastical in nature and would require Court interference in matters of church autonomy," which would violate the

4

Establishment Clause of the First Amendment. The churches appealed that judgment.

## Standard of Review

"We review de novo whether the trial court had subject-matter jurisdiction." Solomon v. Liberty Nat'l Life Ins. Co., 953 So. 2d 1211, 1218 (Ala. 2006).

## Analysis

The churches argue that the trial court erred in dismissing their suit for lack of subject-matter jurisdiction because, they say, the case presents only "civil and property issues." Churches' brief at 17. According to the churches, even if the trial court had to interpret provisions of the Book of Discipline in resolving the dispute, the court could still avoid ecclesiastical questions by applying "neutral principles of law." Id. (citing Haney's Chapel United Methodist Church v. United Methodist Church, 716 So. 2d 1156, 1158 (Ala. 1998) (plurality opinion)). But the churches' central claims turn entirely on the interpretation of ¶ 2553 and whether their efforts to leave the UMC were consistent with that church law. Under existing First Amendment law and our precedent, that interpretive issue constitutes an ecclesiastical question that courts do not

have jurisdiction to decide. Accordingly, as discussed below, we must affirm the judgment.

The United States Supreme Court has held that the Establishment Clause of the First Amendment "severely circumscribes the role that civil courts may play in resolving church property disputes." Presbyterian Church in the United States v. Mary Elizabeth Blue Hull Mem'l Presbyterian Church, 393 U.S. 440, 449 (1969) ("Blue Hull"). Therefore, courts must refrain from deciding such cases when their resolution turns on "'religious doctrine and practice.'" Serbian Orthodox Diocese for the United States and Canada v. Milivojevich, 426 U.S. 696, 710 (1976) (quoting Blue Hull, 393 U.S. at 449).

Our Court has echoed the United States Supreme Court and said that we do not have jurisdiction to "'resolve disputes regarding [a church's] spiritual or ecclesiastical affairs.'" Taylor v. Paradise Missionary Baptist Church, 242 So. 3d 979, 989 (Ala. 2017) (quoting Abyssinia Missionary Baptist Church v. Nixon, 340 So. 2d 746, 748 (Ala. 1976). That includes church-property disputes "if the basis of the schism is due merely to a disparate interpretation of doctrine." Mount Olive Primitive Baptist Church v. Patrick, 252 Ala. 672, 674, 42 So. 2d 617, 618

6

(1949); accord Blue Hull, 393 U.S. at 449 (explaining that "First Amendment values are plainly jeopardized when church property litigation is made to turn on the resolution by civil courts of controversies over religious doctrine and practice").

The "basis of the schism" here is precisely a "disparate interpretation of doctrine." Patrick, 252 Ala. at 674, 42 So. 2d at 618. Recitation of the parties' arguments proves the point. The churches argue that the Conference's imposition of an eligibility statement violates ¶ 2553 because the Judicial Council -- the UMC's ecclesiastical tribunal -- previously issued a statement that ¶ 2553 "'does not require certification of eligibility based on reasons of conscience'" in order to disaffiliate. Churches' brief at 13 (quoting Judicial Council Decision No. 1453). The Conference responds by pointing to a different decision, in which the Judicial Council held that "'conferences may develop additional procedures'" for disaffiliation and that the eligibility-statement requirement is therefore consistent with the Book of Discipline. Defendants' brief at 4 n.4 (quoting Judicial Council Decision No. 1425).

7

In order to grant the churches the relief they seek -- the right to vote on disaffiliation -- the trial court would have to survey the Judicial Council's ecclesiastical decisions, interpret the doctrinal scope of ¶ 2553 of the Book of Discipline, and review Conference determinations about the religious adequacy of the churches' eligibility statements. That is, to decide any property questions, the trial court would have to adjudicate whether each of the churches had adequate "reasons of conscience regarding … the practice of homosexuality or the ordination or marriage of self-avowed practicing homosexuals." ¶ 2553. Resolving those issues would "inherently entail inquiry … into the substantive criteria by which [courts] are supposedly to decide the ecclesiastical question" -- whether the churches' reasons of conscience were sufficient for disaffiliation under ¶ 2553. Milivojevich, 426 U.S. at 713. "But [that] is exactly the inquiry that the First Amendment prohibits." Id.; accord Ex parte Bole, 103 So. 3d 40, 72 (Ala. 2012) (holding that a trial court lacked subject-matter jurisdiction when adjudicating the local church's claim would require an "impermissible inquiry" into the church conference's findings and decisions).

8

In their reply brief, the churches attempt to reframe the suit as a purely secular dispute over property. See Churches' reply brief at 6 ("This is a property rights case."). According to the churches, even if the trial court did have to interpret the Book of Discipline in adjudicating their claims, those interpretive questions would not raise ecclesiastical issues. Rather, the churches argue, the trial court should have followed our precedent in Haney's Chapel and Trinity Presbyterian Church of Montgomery v. Tankersley, 374 So. 2d 861 (Ala. 1979), by applying "neutral principles of law" to resolve this case.

The churches' attempt to recharacterize this dispute as primarily about property is unavailing. The "neutral principles of law" approach allows Alabama courts adjudicating church-property disputes to "consider, in purely secular terms, the language of the deeds, the charter of the local church, any applicable state statutes, and any relevant provisions contained in the discipline of the national church" without running afoul of the First Amendment. Haney's Chapel, 716 So. 2d at 1158. But that doctrine has limits: when deciding such property disputes, civil courts "cannot resolve controversies involving religious doctrine or practice." Tankersley, 374 So. 2d at 865-66.

Adjudicating this dispute would entail precisely what <u>Tankersley</u> proscribes: a resolution of "underlying controversies over religious doctrine." <u>Id.</u> at 866. Contrary to the churches' argument, this case does not "'require[] a court merely to review church records and incorporation documents, without delving into spiritual matters.'" Churches' reply brief at 6 (quoting <u>Murphy v. Green</u>, 794 So. 2d 325, 330 (Ala. 2000)). In fact, the churches did not provide the trial court with any deeds, trusts, charters, or any other secular documents; ¶ 2553 of the Book of Discipline is the sole basis for the property right that they claim to have. That right -- to disaffiliate from the UMC and retain their properties -- hinges on the UMC's ecclesiastical judgment about the adequacy of the churches' "reasons of conscience." ¶ 2553. But the trial court cannot deploy "neutral principles" to answer that question, which necessarily entails "resolv[ing] controversies involving religious doctrine." <u>Tankersley</u>, 374 So. 2d at 865-66.

For that reason, <u>Haney's Chapel</u> is distinguishable. In that case, the UMC sued to quiet title to local church property after the local congregation withdrew from the UMC. The local congregation contended that the two deeds that conveyed the property in trust for the benefit of

the community of Haney's Chapel preempted any trust provision in the Book of Discipline. Id. Applying "neutral principles of law" to the deeds, this Court determined that the deeds' terms clearly "convey[ed] the property to the local church" in order to "ensure that the national church could not gain title to the property." Id. at 1159. Thus, there was no ecclesiastical question to decide.

Likewise, Tankersley did not raise any ecclesiastical issues. There, a majority of the members of a local congregation wanted to leave the Presbyterian Church in the United States and retain control of the local church's corporate entity and use of the corporation's property. 374 So. 2d at 862. The "basic question" before this Court was which parishioners were members of the local church's corporation -- and therefore owners of the property -- an issue that the Court resolved by examining the local church's incorporation documents and property deeds. Id. at 866. The trial court in that case therefore had subject-matter jurisdiction because "there was no need to decide any ecclesiastical issues in order to decide the property issues."[1] Id.

---

[1]The churches also argue that the trial court erred by relying on recent companion cases in Oklahoma concerning Methodist churches. See Oklahoma Annual Conf. of the United Methodist Church, Inc. v.

Here, by contrast, the "basic question" is not a straightforward one of property or corporate law. To the contrary, the primary relief that the churches requested -- in their initial complaint as well as in their TRO application -- was the "right to vote, as local church congregations, regarding the issue of disaffiliation" so that they could retain their properties when they left the UMC. But rather than pointing to any deed or other secular documents as the basis for their property right, the churches exclusively relied on ¶ 2553, which they acknowledged is based on ecclesiastical matters. Consequently, to reach any property issues, the trial court would have to decide whether the individual churches had

_____

Timmons, 538 P.3d 163 (Okla. 2023) ("Timmons I"), and Oklahoma Annual Conf. of the United Methodist Church, Inc. v. Timmons, 538 P.3d 170 (Okla. 2023) ("Timmons II"). In Timmons I and II, the Oklahoma Supreme Court reversed a trial court's injunction ordering the Oklahoma Annual Conference to recognize the Oklahoma churches' vote to disaffiliate under ¶ 2553 and hold a special conference to approve that vote. In each case, the Oklahoma Supreme Court ordered the trial court to dismiss the suit for lack of subject-matter jurisdiction because the churches' property claims were "inextricably intertwined with church doctrine." Timmons I, 538 P.3d at 168; Timmons II, 538 P.3d at 175. According to the churches in this case, Timmons I and II are distinguishable because the Oklahoma churches sought a remedy contrary to, not consistent with, the Book of Discipline. But that is a distinction without a difference; the presence of an ecclesiastical question does not turn on whether the plaintiff seeks a remedy contrary to or consistent with the Book of Discipline.

adequate "reasons of conscience regarding ... the practice of homosexuality or the ordination or marriage of self-avowed practicing homosexuals." ¶ 2553. That inquiry is "strictly and purely ecclesiastical in its character, -- a matter over which the civil courts exercise no jurisdiction." Watson v. Jones, 80 U.S. (13 Wall.) 679, 733 (1871).

Conclusion

Because exercising jurisdiction over this case would entail resolving a dispute on the basis of religious practice or doctrine, we affirm the trial court's judgment dismissing the suit.

AFFIRMED.

Bryan, J., concurs specially, with opinion, which Mitchell, J., joins.

Cook, J., concurs specially, with opinion, which Parker, C.J., joins.

Sellers, J., concurs in the result.

Mendheim, J., concurs in the result, with opinion.

Shaw, Wise, and Stewart, JJ., recuse themselves.

BRYAN, Justice (concurring specially).

I concur in the main opinion. I also agree with Justice Cook's special writing and share his "sympathy for the predicament faced by the churches in this case." ___ So. 3d at ___. Like Justice Cook, I too "am concerned by the churches' claim" that the Alabama-West Florida Conference ("the Conference") of the United Methodist Church, Inc. ("the UMC"), "unfairly engineered the disaffiliation process to prevent their departure from the UMC." ___ So. 3d at ___. The Conference's treatment of the churches raises serious concerns about the fairness of the process in this case. However, because the churches' claim relies solely on ¶ 2553 of the UMC's Book of Discipline, this case involves an ecclesiastical matter over which, pursuant to controlling precedent, we do not have jurisdiction. Thus, we are constrained to not reach the merits here.

By enacting ¶ 2553, the UMC allowed churches the opportunity to leave the UMC and retain their property if they were to leave "for reasons of conscience"; the churches had a certain period to make their decision. Deep into that period, the Conference adopted a new requirement -- one not explicitly contained in the Book of Discipline -- making it more burdensome for churches to leave under ¶ 2553. There is something

extremely unsettling about changing the rules during the course of the game. I question whether this process was fair. However, as noted, we simply do not have the jurisdiction to decide this matter.

Mitchell, J., concurs.

COOK, Justice (concurring specially).

I concur fully with the decision of this Court. Although this Court, in Ex parte Alabama-West Florida Conference of the United Methodist Church, Inc., [Ms. SC-2023-0385, Apr. 12, 2024] ___ So. 3d ___ (Ala. 2024), recently held that a civil court did have jurisdiction to review a plaintiff's property claim against the Alabama-West Florida Conference ("the Conference") of the United Methodist Church, Inc. ("the UMC"), and another UMC agency, the claims in the present action are materially different because they concern "a dispute over issues of '"religious practice or doctrine."'" Id. at ___ (citations omitted). While I am troubled by the outcome here, it is the job of a good judge to stay within his or her assigned role. As former United States Supreme Court Justice Antonin Scalia once stated, "'[t]he judge who always likes the results he reaches is a bad judge.'" Katie Glueck, Scalia: The Constitution is "dead," Politico, Jan. 29, 2013 (at the time of this decision, a copy of this article could be located at: https://www.politico.com/story/2013/01/scalia-the-constitution-is-dead-086853).

I write separately to express my sympathy for the predicament faced by the churches in this case. In particular, I am concerned by the

16

churches' claim that the Conference unfairly engineered the disaffiliation process to prevent their departure from the UMC. As the main opinion explains, in 2019 the UMC enacted ¶ 2553 of the Book of Discipline, which set forth a disaffiliation process that would expire on December 31, 2023. In June 2023, however, the churches allege, the Conference suddenly and unexpectedly changed the process by which the churches could exercise their right to disaffiliate from the UMC pursuant to ¶ 2553. This revised procedure required the churches to submit an "eligibility statement" detailing the "current and specific disagreement(s) that the [churches] ha[ve] with the changes to the Book of Discipline made in 2019."

The churches' complaint alleges that the eligibility statements they subsequently submitted "were summarily refused without any explanation or reasoning" and that the Conference engineered this procedural change "with the intent of preventing the last group of churches from disaffiliating." One UMC clergyman likened similar tactics deployed by other UMC conferences to "Lucy pulling the football away as Charlie Brown tries to kick it" -- explaining that "churches attempting to follow the disaffiliation process in good faith have had the

17

football pulled away and disaffiliation unfairly refused." Thomas Lambrecht, <u>Finding Fairness</u>, Good News, Mar. 3, 2023 (at the time of this decision, a copy of this article could be located at: https://goodnewsmag.org/finding-fairness/).

Although I sympathize with the fairness concerns raised by the churches, the First Amendment to the United States Constitution (and our existing caselaw) leave this Court with no choice but to deny their request for relief. Instead, the only remedy for the conduct alleged by the churches in this case must come from the members of the Judicial Council, the UMC's ecclesiastical tribunal (that is, its own judicial system), guided by their faith, consciences, and the principles of Biblical justice.

Parker, C.J., concurs.

MENDHEIM, Justice (concurring in the result).

I agree that our courts should not exercise jurisdiction to settle the dispute between the parties in this case, and, thus, I agree that the trial court's judgment of dismissal is due to be affirmed. However, based on the views expressed in my special writing in Sails v. Weeks, [Ms. SC-2023-0158, Apr. 5, 2024] __ So. 3d __, __ (Ala. 2024) (Mendheim, J., concurring specially), I do not agree with the reasoning employed by the main opinion to reach that conclusion.